**METRO WASTE SYSTEMS, INC.,**
**Plaintiff/Respondent,**

v.

**A.L.D. SERVICES, INC.,**
**Defendant/Appellant.**

No. 68273.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 28, 1996.

**336**

Barry S. Ginsburg, Clayton, for appellant.

Wilke & Wilke, Dan Wilke, Dean R. Gallego, Clayton, for respondent.

PUDLOWSKI, Presiding Judge.

A.L.D. Services (ALD) appeals the trial court's denial of ALD's motion for a new trial, made after the trial court entered judgment on a verdict in favor of respondent Metro Waste Systems (Metro). We find ALD's multifarious assignments of error meritless.

*Facts*

The evidence presented at trial, viewed favorably to the judgment as required by our standard of review, reveals that in 1989, ALD entered into a contract with Metro which called for Metro to provide trash removal services for ALD at its facility in Fenton, Missouri. The original contract, which contemplated a monthly charge of $119, was executed by Troy Holt (acting for Metro) and Rich Blase (an employee of ALD at the time). Holt testified that upon arriving for the first time at the ALD warehouse, he asked to see the person in charge of waste removal service and was thereupon introduced to Blase. Blase, who described himself to Holt as the warehouse manager, indicated to Holt before signing the service agreement that he had authority to enter such contracts.

The original contract, which covered a three year term, contained a liquidated damages clause; that clause provided that if ALD breached the contract, Metro would be entitled to six times the monthly service charge applicable at the time of the breach. The same paragraph included a provision which compelled the loser in any litigation between the parties to pay the attorney's fees of the prevailing party. The contract renewed automatically upon expiration unless cancelled in writing, and allowed for adjustments in the frequency and extent of service (with corresponding adjustments in cost).

Metro commenced service immediately after execution of the contract. Over the next few years, there were several adjustments in

the service provided and the charges for such service. Both parties performed their contractual obligations without incident until June, 1993, when Metro learned that ALD had moved from its Fenton location to St. Charles, Missouri. Tensions soon flared as ALD attempted to escape the contract, eventually claiming that no valid contract existed because Blase lacked the authority to enter such a contract. The lawsuit underlying this appeal soon followed. That action culminated in a jury award of liquidated damages, prejudgment interest and attorney's fees for Metro. ALD then filed a new trial motion, which the trial court denied; ALD now appeals from that order.

*Issues*

### A. Jury Instruction Eight

ALD's initial claim of error is that the court erred when it approved Metro's jury instruction number eight, a damage instruction which is based on Missouri Approved Instruction (MAI) 4.01, which reads as follows:

> If you find in favor of plaintiff, Metro Waste Systems, Inc., then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe plaintiff sustained as a direct result of the occurrence mentioned in the evidence.

ALD contends that because one component of the damages which Metro sought was a liquidated damage award, use of MAI 4.09 was mandatory and failure to use it was reversible error. ALD did not offer an instruction patterned on MAI 4.09 to the trial court. The only objection ALD lodged with regard to Metro's instruction eight was that the term "occurrence" needed modification or replacement. Even this "objection" (ALD never suggested an appropriate modification) was arguably waived, as the discussion inaugurated by it came to an unresolved conclusion when ALD's attorney abruptly stated "Let's just move on." However, we will address ALD's contention because we believe doing so will have some jurisprudential value.

■ ALD's argument is founded on *Standard Improvement Co. v. DiGiovanni*, 768 S.W.2d 190 (Mo.App.1989), a precedent which stands for the proposition that use of MAI 4.09 is mandatory when the only element of damage sought is a liquidated damage amount. *DiGiovanni* does not control the instant situation, where the liquidated damage sum provided for under the contract was but one of the damage elements sought. Use of MAI 4.09 would have been inappropriate in this case, since the proper amount of attorney fees was disputed and, therefore, called for a factual evaluation. Conversely, there is authority which holds that MAI 4.01 is the correct damage instruction in breach of contract actions. *Boten v. Brecklein*, 452 S.W.2d 86, 93 (Mo.1970); *Hopkins v. Goose Creek Land Co., Inc.*, 673 S.W.2d 465, 469 (Mo.App.1984).

■ ALD also seems to complain that failure to modify the word "occurrence" in Metro's instruction eight was error, though ALD apparently does not consider this argument worthy of a separate point relied on in its brief. In essence, ALD protests that use of MAI 4.09 was mandatory while simultaneously insisting that MAI 4.01 would have been correct if it had been altered. The nature of the modification which ALD advocates remains a mystery, and ALD's failure to elucidate the question violates Rule 70.03 and precludes further discussion. *Steffens v. Paramount Properties, Inc.*, 667 S.W.2d 725, 727 (Mo.App.1984).

■ ALD also asserts that the prejudice of this and other alleged trial court errors is demonstrated by an excessive liquidated damage award. While we do not agree, we do find that the liquidated damage portion of the jury's award must be decreased. The liquidated damage amount awarded by the jury was $1,450, which is the amount requested by Metro's counsel in his closing argument. Under the contract, the liquidated damage amount was six times the monthly service fee applicable at the time of the breach, or $1,248 ($208 × 6). Thus, the additional $202 liquidated damage award was not supported by substantial evidence, and the trial court should reduce the judgment

by this amount on remand.[1]

### B. Jury Instruction Six

ALD argues that jury instruction number six was erroneously submitted to the jury because it requires the jury to decide legal questions. Instruction six, the verdict director, stated:

Your verdict must be for plaintiff Metro Waste Systems, Inc., if you believe:

First, Richard Blase entered into a service agreement whereby defendant promised to pay plaintiff for trash hauling services, and

Second, Richard Blase was acting within the course and scope of his agency when he signed the service agreement, and

Third, plaintiff was ready, willing, and able to continue to perform under the terms of the service agreement between the parties, and

Fourth, defendant did not permit plaintiff to continue trash hauling services, and

Fifth, because of such refusal, defendant's contractual obligations were not performed, and

Sixth, plaintiff was thereby damaged.

ALD claims that determinations as to the terms of the service agreement and performance of contractual obligations present questions of law that were improperly submitted to the jury. However, ALD did not make any such objection to the instruction before it was submitted to the jury and, therefore, operation of Rule 70.03 precludes review of the issue. We note in passing that submission of the instruction, which essentially submitted the ultimate facts of the case to the jury, was not erroneous. *Levey v. Roosevelt Federal Savings & Loan Association of St. Louis*, 504 S.W.2d 241, 248–49, fn. 1 (Mo.App.1973); *Smith Moore and Company v. J.L. Mason Realty and Inv., Inc.*, 817 S.W.2d 530, 534 (Mo.App. E.D.1991).

### C. "False Evidence"

During the trial, Metro introduced a second document, signed by Blase and dated November 9, 1990, which adjusted the service provided to ALD as well as the amount charged. This document was not the basis of Metro's breach of contract claim, but was merely additional evidence that Blase in fact had authority to enter waste disposal contracts—i.e., the central issue in the case. ALD now argues that this document was "manufactured evidence," the introduction of which requires that the jury's verdict be nullified and the case remanded for a new trial.

Numerous facts doom ALD's argument. First, ALD did not object when Metro's witness was presented with the document and testified about it. Secondly, even if one accepts that the document was a fabrication, a new trial would not be warranted since the evidence was cumulative on the issue of Blase's authority, and this court will not presume prejudice in such a case. *Wulfing v. Kansas City Southern Industries, Inc.*, 842 S.W.2d 133, 150 (Mo.App. W.D. 1992). But most importantly, ALD's argument that the document was manufactured evidence hinges on the assumption that Blase was no longer employed by ALD at the time the document was allegedly executed, while in fact, there is substantial evidence to support the inference that Blase was employed by ALD on November 9, 1990. Blase himself testified that he left ALD in 1990 or 1991, and Linda VanSickle, another former ALD employee, testified that she left ALD in 1991 and that Blase left some six months before she did. The jury was free to believe this testimony and to ignore evidence to the contrary, and viewed in the light most favorable to the verdict, the evidence supports the jury's conclusion that Blase was an ALD employee on the relevant date. Once this is grasped, ALD's "manufactured evidence" claim disintegrates. Point denied.

---

1. Originally, Metro claimed as a fourth item of damages $416.00 for two months of service for which ALD did not pay. Metro abandoned its request for this amount during the instruction conference, and it was not requested in closing argument, so that it cannot justify the excess liquidated damage award.

## D. Attorney's Fees

ALD next asserts that the trial court erred in submitting to the jury the determination of Metro's attorney's fees, because "no guidance was given" as to how such a calculation should occur. In the same point relied on, ALD protests that the jury's attorney's fees award is not supported by substantial evidence, apparently suggesting, thereby, that the trial court also erred in entering judgment on the jury's verdict. Even this argument contains two subparts: lack of evidence that the fees were necessary and reasonable, and lack of expert testimony that the fees were necessary and reasonable.

■ ALD's complaint concerning the trial court's lack of instructional guidance to the jury regarding attorney's fees will not be addressed because no such objection was made at trial. Rule 70.03. We will treat ALD's "no testimony" and "no expert testimony" argument as a single "no substantial evidence" argument. ALD did not raise the "expert testimony" argument in its motion for new trial, and does not cite to authority that any such expert testimony requirement exists under Missouri law. Metro's counsel testified as to his hourly fee, the number of hours spent on the case and why such hours (and the resulting fees) were necessary and reasonable. This is sufficient evidence to support the jury's award of attorney fees. *Fust v. Francois*, 913 S.W.2d 38, 47 (Mo.App. E.D.1995).

## E. Apparent Authority

ALD argues that the trial court erred in submitting jury instruction number seven to the jury because that MAI envisages an apparent authority theory, whereas Metro had only pled (and, therefore, was only entitled to submit) a case premised on actual authority. Thus, ALD contends that MAI 13.05, not 13.07(2), was the proper pattern instruction. Metro's petition alleged, in relevant part, that ALD "acted by and through its authorized representatives who acted within the course and scope of their employment or agency for [Metro]." Metro argues that because the petition does not state whether ALD's representatives were authorized through actual authority or apparent authori-

ty, the petition lends itself to either interpretation and should be favored with the one which supports the judgment. We find this gloss rather tenuous, but we need not conclusively decide its merit because a finding of error can be avoided by employment of an alternative rationale.

■ While an express amendment of the petition to conform to the evidence of apparent authority would have doubtlessly been granted as a matter of course, Metro did not request express amendment of its petition. However, a petition will be deemed to have been amended to conform to the evidence by the implied consent of the defendant where the plaintiff adduces evidence which is not otherwise relevant to an issue in the case and the defendant does not object that such evidence is beyond the scope of the pleadings. Rule 55.33(b); *Gooch v. Avsco, Inc.*, 340 S.W.2d 665, 668–69 (Mo.1960); *Archway Kitchen & Bath v. Lands Dev. Corp.*, 838 S.W.2d 13, 15 (Mo.App. E.D.1992); *Sparks v. Consolidated Aluminum Co.*, 679 S.W.2d 348, 353 (Mo.App.1984).

■ In this case, Hoyt testified for Metro that he believed Rich Blase had the authority to enter trash disposal contracts for ALD. This testimony is not relevant to Blase's actual authority, but it is relevant to his apparent authority. ALD did not object to this testimony as going beyond the pleadings, so that Metro's petition is deemed amended by implied consent. Therefore, Metro was entitled to submit the case on a theory of apparent authority, and instruction seven, patterned on MAI 13.07(2), was properly given.

## F. Prejudicial Misconduct

■ In its final Point on appeal, ALD complains of "repeated instances of injecting improper and inflammatory statements by counsel for Metro" concerning ALD's failure to settle the case, ALD's failure to provide truthful discovery responses, and ALD's principal, Alan Deutschmann. ALD circumscribes these allegations with the airy phrase "cumulative prejudice" and concludes that a new trial is in order. Rule 84.04(d) requires that points relied on "state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why

they are claimed to be erroneous." While ALD's sixth point denounces many actions, they are all actions of Metro's counsel, not rulings of the trial court. The point asserts that the trial court should have granted a new trial, but neglects to set forth the trial court rulings that were erroneous and that would, therefore, necessitate a new trial. Indeed, numerous statements of Metro's counsel, with which ALD now takes issue, were not objected to at trial. Other statements were objected to and the objections were sustained, but ALD did not move for a mistrial, so that it may not now premise its demand for a new trial on such statements. *Hacker v. Quinn Concrete Co., Inc.,* 857 S.W.2d 402, 410 (Mo.App. W.D.1993).

■ ALD seems to argue for an innovation in appellate review whereby numerous acts of "misconduct" by an attorney might coalesce to create such prejudice that an appellate court should review the trial court's refusal to declare a mistrial (or grant a new trial), irrespective of the dictates of Rules 84.04 and 84.13. Of course, we reject this transfiguration of established protocol. As *Biever v. Williams,* 755 S.W.2d 291 (Mo.App. W.D.1988), the only case cited by ALD in support of its approach, announces, "The requirements of Rule 84.04 are not only mandatory but they are an essential component to permit effective functioning of the appellate courts. Any point relied on for appellate review of alleged error should definitely formulate and isolate the exact issues to be reviewed." *Id.* at 293 (citations omitted). In any event, the decision whether to grant a new trial is vested largely in the discretion of the trial court, and this is especially true when the asserted grounds for such new trial relate to "prejudicial misconduct" by an opposing attorney. *Hacker,* at 415.

This case is remanded to the trial court for a determination of Metro's attorney's fees incurred on appeal, as well as for remittitur of the original judgment, consistent with this opinion.

SIMON and HOFF, JJ., concur.