James Roger MURRAY,
Plaintiff–Appellant,

v.

Mary E. LAMONT, Defendant–
Respondent.

No. 20419.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 16, 1996.

Charles Buchanan, Russell A. Ward, Joplin, for plaintiff-appellant.

John G. Schultz, Michael J. Tubbesing, Franke & Schultz, P.C., Kansas City, for defendant-respondent.

SHRUM, Judge.

Pursuant to a jury verdict, judgment was entered for James Roger Murray (Plaintiff) for damages he sustained in an automobile accident with Mary E. Lamont (Defendant). Plaintiff appeals from that judgment.

Plaintiff's first claim is that the trial court erred when it excluded certain testimony by his treating physician. His other points charge the trial court with alleged errors in connection with Plaintiff's post-judgment effort to impeach the jury verdict based on Plaintiff's assertions that a juror had intentionally misrepresented or had refused to disclose her prejudice toward Plaintiff's counsel. For the reasons stated below, we affirm.

On February 14, 1989, Defendant's eastbound vehicle crossed the centerline of Highway 96 near Carthage, Missouri, and struck Plaintiff's westbound automobile. Plaintiff injured his knees when they struck the dashboard of his car. He was initially treated by his family physician, Dr. Williams, for approximately fifteen months. In April, 1990, Dr. Williams referred Plaintiff to an orthopedic specialist, Dr. Burleigh. At that time, Dr. Burleigh concluded that Plaintiff's knee pain resulted from chondromalacia of the patellae of each knee. Plaintiff was placed on anti-inflammatory medication and was referred to a physical therapist.

Plaintiff did not see Dr. Burleigh again until February, 1994, when increased pain in both knees caused him to seek treatment. Dr. Burleigh's examination during the February, 1994, visit revealed "appreciable degenerative changes [involving] the medial or inner compartments of both knees." Later, in March, 1994, Dr. Burleigh also found indications of a possible mechanical defect in Plaintiff's right knee. Arthroscopic examination in May, 1994, confirmed a radial tear to the meniscus in Plaintiff's right knee and also a "significant area of injury to the lateral aspect of his medial femoral condyle," defects which Dr. Burleigh repaired surgically.

At trial, Dr. Burleigh opined that Plaintiff's auto accident caused the meniscal tear and the condyle injury, but not the degenerative changes in the medial compartment of Plaintiff's knees. According to Dr. Burleigh's testimony, the pre-existing degenerative disease in Plaintiff's knees, standing alone, would have necessitated total knee replacement surgery by the time he was "in his early sixties" even if this accident had never happened. Dr. Burleigh concluded that the effect of this accident was to shorten the time until Plaintiff would require the knee replacement surgery. Specifically, Dr. Burleigh testified that "deterioration or wearing of the medial compartment of [Plaintiff's] right knee will be more accelerated" and his "knee will wear at a much accelerated rate." However, Plaintiff's attempts to elicit from Dr. Burleigh his opinion as to when the knee replacement would be necessary were rejected.

"Q. What is your best medical judgment concerning when he will be a candidate for total knee replacement on the right side, taking into account the damage and injury that was caused by the wreck?

"A. Once again, I'm being asked to take into account a multitude of variables. It

will definitely be sooner. As to how much sooner, maybe ten years.

"[Defense counsel] Your honor, again, 'maybe' isn't enough."

Defense counsel's objection was sustained, the doctor's "maybe ten years" answer was stricken, and the jury was told to disregard it. Plaintiff then made another attempt to introduce such evidence.

"Q. [To Dr. Burleigh] Do you have an opinion based upon reasonable medical certainty concerning how much sooner this total knee replacement will be?

"A. Once again, I ... would have to break that question down into two specific answers. Number one, it is definitely going to be earlier. As to a finite period of time, I cannot give that in exact figures, because there are a multitude of variables that I have no control over with regards to defining an answer to that question.

"Q. Can you state with a probability what you believe that time frame will be?"

Again, defense counsel's objection to the "time frame" question was sustained. The trial court then rejected Plaintiff's offers to prove that in Dr. Burleigh's opinion, Plaintiff's total knee replacement had been accelerated ten years because of the wreck.

The jury awarded Plaintiff $2,310 for personal injury damages and $1,700 for property damages. This appeal followed.

*Point I: Exclusion of Expert Testimony*

Plaintiff's first point charges the trial court with error in excluding Dr. Burleigh's "ten year acceleration" opinion and in rejecting the offers of proof on such testimony. We analyze this point with the following basic principles in mind.

■ Appellate courts give substantial deference to the decisions of trial courts as to the admissibility or exclusion of evidence, which will not be disturbed absent a showing of an abuse of discretion. *Oldaker v. Peters,* 817 S.W.2d 245, 250[3] (Mo. banc 1991); *Miller v. Weber,* 688 S.W.2d 389, 391 (Mo.App. 1985). "An abuse of discretion is 'a judicial act which is untenable and clearly against reason and which works an injustice.'" *McPherson Redevelopment Corp. v. Watkins,* 782 S.W.2d 690, 692 (Mo.App.1989) (quoting *Mac–Fab Products v. Bi–State Dev. Agency,* 726 S.W.2d 815 (Mo.App.1987)). Trial courts abuse their discretion in ruling on evidence only when their decision is clearly against the logic of the circumstances before them and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberation. *Oldaker,* 817 S.W.2d at 251.

To be a ground for reversal, trial court error in admitting or excluding evidence must be prejudicial and not harmless. *Wilcox v. St. Louis–Southwestern Railroad Co.,* 418 S.W.2d 15, 19 (Mo.1967). *See also* JOHN C. O'BRIEN, MISSOURI LAW OF EVIDENCE § 8–10 (3rd ed. 1996). An appellate court cannot reverse a judgment unless it finds error committed by the trial court against the appellant "materially affecting the merits of the action." § 512.160.2, RSMo 1994; Rule 84.13(b).[1]

■ Even if we assume that the trial court erred in rejecting Dr. Burleigh's "ten year acceleration" testimony, a question we do not decide, we are not persuaded that Plaintiff was prejudiced. Plaintiff's only claim of prejudice stemming from this alleged error is found in the argument section of his brief; it is not part of his point relied on. There he contends that the excluded evidence was a crucial piece of his damage evidence. He asserts that "if the Doctor had been allowed to testify in detail ... the jury would have known that the time for total knee replacement was accelerated approximately ten

---

**1.** § 512.160.2 reads: "No appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, and materially affecting the merits of the action." Similarly, Rule 84.13(b) provides:

"No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action."

years, making the total knee replacement necessary when [Plaintiff] was in his fifties." Continuing, Plaintiff asserts that "[a]ccelerating the total knee replacement into his fifties would clearly demonstrate a more serious injury ... [as] the surgery would take place during [Plaintiff's] working years." He argues that since his work required him to climb ladders, crawl, lift and twist, the "ten year" evidence would have allowed the jury to infer that the earlier knee replacement "would be a serious handicap in [his] employment" and "would significantly interfere with [his] active working life."

The foregoing arguments ignore Dr. Burleigh's prediction that in any event Plaintiff would have needed knee replacement surgery in his early sixties, inferably while he was still in his "working years." Dr. Burleigh's testimony that Plaintiff's "knee will wear at a much accelerated rate" provided evidence from which the jury could conclude that the injury was serious and would interfere with his active working life. Dr. Burleigh testified at length about the consequences of total knee replacement surgery, thus enabling the jury to evaluate the handicapping effect of accelerated surgery. Specifically, he stated that after such surgery Plaintiff would no longer be able to participate in competitive athletics such as basketball, lacrosse, rugby, or football but could engage in recreational sports such as bowling, golf, light tennis, mountain climbing, fishing, and hiking. He expressed his opinion that Plaintiff's work would have to be modified "as far as excess stair climbing and ... ladder work ... but as far as being on his feet all day, ... walking, carrying heavy objects, these are well within the capability of a joint replacement arthroplasty." Dr. Burleigh testified that Plaintiff would be able to crawl on his knees and that "[r]otational stresses placed within a work status are quite acceptable to the joint." Under the circumstances, we are not persuaded that exclusion of the "ten year" testimony materially affected the merits of the action. There was ample evidence, if believed by the jury, to establish that the auto accident would

necessitate a "much accelerated" knee replacement surgery and that it would interfere with Plaintiff's ability to perform his present job. We are not convinced that the exclusion of evidence that pegged the time of the surgery at ten years from the time of trial worked an injustice. Point I is denied.

*Point II: Impeachment of Jury's Verdict by Juror Delaney*

In his second point, Plaintiff alleges that during the hearing on the motion for new trial, the trial court erred in excluding the testimony of Juror Delaney concerning alleged intentional misrepresentation or non-disclosure by Juror McDaniel. In a subsequent offer of proof, Juror Delaney was allowed to describe what her testimony would have been:

> "She—we got into the jury room, we picked a foreman. Then fault didn't have to be decided, so we needed to decide on the money. And [Juror McDaniel] said that as far as she was concerned, Russ Ward was a son of a bitch and that he shouldn't get a dime, and none of the other attorneys in the case should get any money, either."

Plaintiff argues that this testimony was admissible to show that Juror McDaniel made an intentional misrepresentation or non-disclosure during voir dire when she responded affirmatively to a question by the court as to whether she knew Mr. Ward, an attorney for Plaintiff, and then stated "as far as him being to me, he has been a very, very decent lawyer."

In support of his contention that Juror Delaney's testimony should have been allowed, Plaintiff cites *City of Flat River v. Edgar*, 412 S.W.2d 537 (Mo.App.1967), and *Sadlon v. Richardson*, 382 S.W.2d 9 (Mo. App.1964), for the proposition that an intentional failure to disclose information on voir dire examination can be shown by statements made by the non-disclosing juror, including statements made in the jury room. However, as the Missouri Supreme Court has more recently stated:

> "No court has approvingly cited *Flat River*. *State [ex rel. Kansas City Power & Light Co.] v. Campbell*, 433 S.W.2d 606,

618 (Mo.App.1968); *Roach v. Consolidated Forwarding Co.*, 665 S.W.2d 675, 679 (Mo. App.1984). Five years after *Flat River*, this Court summarily refused juror testimony that two jurors failed to answer voir dire questions truthfully. *Mayberry v. Clarkson Construction Co.*, 482 S.W.2d 721, 724 (Mo.1972). This Court reaffirms *Mayberry; Flat River* should no longer be followed."

*Wingate v. Lester E. Cox Medical Center*, 853 S.W.2d 912, 916 (Mo. banc 1993).[2] *Wingate* removed any doubt concerning the current state of Missouri law on this point, declaring that "[i]t is a 'well-founded and long established rule, based on sound public policy, ... that the affidavit or testimony of a juror is inadmissible and is not to be received in evidence for the purpose of impeaching the verdict of a jury.'" *Id.* (citing *Smugala v. Campana*, 404 S.W.2d 713, 717[13] (Mo. 1966)).

The testimony of Juror Delaney was offered to impeach the verdict. Accordingly, it was inadmissible and the trial court did not err in excluding her testimony. Point II is denied.

*Point III: Impeachment of Jury's Verdict by Juror McDaniel's Daughter*

■ In his third point relied on, Plaintiff complains that the trial court erred during the hearing on the motion for new trial when it excluded the testimony of Juror McDaniel's daughter; testimony again concerning alleged intentional misrepresentation or non-disclosure by Juror McDaniel in her voir dire responses. Plaintiff represents that the trial court excluded this testimony based upon a hearsay objection. That ground was stated initially, but as the objection was being argued, defense counsel also stated "[j]udge, this is the whole reason why you don't impeach a jury's verdict by calling their children into court." The judge then sustained the objection without specifying upon which ground he had based his ruling. Plaintiff

was then allowed to make an offer of proof, during which Juror McDaniel's daughter stated that her mother had said "a lot of times" before the trial that "she'd been tricked" by Mr. Ward and her ex-husband.

We need not decide the issue which the parties focus on in this point, i.e., whether the juror's daughter's testimony was inadmissible hearsay, because the other stated ground for excluding the testimony is valid. The rationale for excluding the testimony of Juror McDaniel's daughter is a logical extension of the rule stated in *Wingate* that the testimony of a juror is inadmissible to impeach the verdict of a jury. The purported statement of a juror (here, McDaniel) offered in another person's testimony (here, her daughter) should not be granted greater status than the affidavit or testimony of the juror. *Williams Carver Co. v. Poos Bros., Inc.*, 778 S.W.2d 684, 688 (Mo.App.1989). "Jury deliberation must be guarded to bring finality to the litigation process, and in addition to the rule precluding a juror's testimony about the jury's deliberation, matters inherent in the verdict are not assailable by ... anyone for the purpose of impeaching the verdict." *Id.*

The testimony of Juror McDaniel's daughter was offered to impeach the verdict. Accordingly, it was inadmissible and the trial court did not err in excluding her testimony. Point III is denied.

*Point IV: Juror McDaniel's Voir Dire Disclosures*

In his final point on appeal, Plaintiff argues that the trial court erred in failing to grant a new trial because the evidence showed that intentional non-disclosure by Juror McDaniel occurred during voir dire and that intentional misrepresentations made by her during voir dire were exposed by her statements made during jury deliberations.

The latter of these two bases is a reiteration of Plaintiff's second point of error.

---

2. As we said, Plaintiff also relies on *Sadlon*, a case cited by the *Flat River* court. Since *Sadlon* states the same "narrow exception" closed by

*Wingate* when it overruled *Flat River*, we deem it to have been implicitly overruled by *Wingate*.

Such testimony was properly excluded by the trial court and as such could not have been the basis for the granting of Plaintiff's motion for new trial. The matter of intentional non-disclosure during voir dire was finally raised as a point of error in Point IV, although it was discussed at length in the argument section following Plaintiff's second point relied on.

■ Plaintiff asserts that Juror McDaniel failed to disclose that Mr. Ward was representing her ex-husband in an adult abuse matter pending at the time of trial. "Nondisclosure occurs only after a party asks a clear question." *Wingate*, 853 S.W.2d at 916[8]. The court asked: "Does anyone on the jury panel know ... Mr. Ward ...?" When McDaniel had the opportunity, she responded: "Russ Ward is my ex-husband's lawyer." Plaintiff seems to insist that this question should have caused McDaniel to disclose a wealth of information relating to Mr. Ward's representation of her ex-husband. We disagree. We are sympathetic to Mr. Ward's inability to readily identify McDaniel as an adversary in another proceeding due to the fact that she no longer shared her ex-husband's last name. However, McDaniel answered the court's question in sufficient detail, if not to jar Mr. Ward's memory, then at least to alert him to the need to further question McDaniel about his representation of her ex-husband. Mr. Ward was present during voir dire, and given that he had the opportunity to ask the follow-up questions he now pursues in hindsight, we will not conclude that Juror McDaniel intentionally concealed any information concerning Mr. Ward's representation of her ex-husband.

■ The determination of nondisclosure is left to the discretion of the trial judge and that ruling will be disturbed only upon a showing of an abuse of discretion. *Wingate*, 853 S.W.2d at 917[17]. Since the trial judge's ruling on this aspect of Plaintiff's motion for new trial was not " 'clearly against the logic of the circumstances' " or " 'so arbitrary and unreasonable as to shock the sense

of justice and indicate a lack of careful consideration,' " we cannot say that the trial court abused its discretion. *See id.* (citation omitted). Point IV is denied.

Affirmed.

CROW, P.J., and PARRISH, J., concur.