A.G. EDWARDS & SONS, INC.,
Plaintiff/Respondent,

v.

John R. DREW and the Daniel and Henry Company, Defendants/Appellants.

No. 72707.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 31, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 30, 1998.

Application for Transfer Denied
Nov. 24, 1998.

Sanford Goffstein, Lori R. Koch, St. Louis, for appellant.

Richard J. Pautler, St. Louis, for respondent.

RHODES RUSSELL, Judge.

A.G. Edwards & Sons ("AGE") brought suit against its insurance brokers, John R. Drew and The Daniel and Henry Company ("D & H"), for breach of contract and breach of fiduciary duty. The jury found in favor of AGE and awarded $581,645.40. The trial court subsequently entered an order sustaining AGE's motion for prejudgment interest in the amount of $157,191.69 and sustaining D & H's motion for credit for payment received in the amount of $170,686.00. D & H and Drew now appeal, arguing that the trial court erred in: 1) submitting both claims; 2) refusing to allow it to introduce evidence of AGE's conduct and evidence of AGE's settlement with a third party; 3) allowing AGE to submit an incorrect measure of damages; and, 4) awarding prejudgment interest on AGE's claims. We affirm.

AGE is an investment banking firm with its principal office in St. Louis. It provides medical benefits to approximately 7,000 of its employees and their dependents. D & H is an insurance broker with its principal office in St. Louis. Drew worked as a broker with D & H. D & H had been AGE's insurance broker since 1982. D & H assisted AGE with the purchase of a variety of insurance, including a kind of policy known as a stop-loss medical policy.[1]

AGE had a stop-loss medical policy issued by General American which would expire on March 1, 1992. In late 1991 or early 1992, AGE asked D & H to provide AGE with quotes from other insurers to see if it could replace the General American policy with comparable insurance at less cost. D & H and AGE entered into an oral agreement in which D & H agreed to obtain proposals and price quotations from various insurance companies for a stop-loss medical policy and to present those proposals and quotations accurately to AGE. AGE agreed to pay D & H a commission of approximately $30,000 for its services.

D & H solicited a proposal from Boston Mutual Life Insurance Company ("Boston Mutual"). On February 7, 1992, D & H received a quote sheet from Boston Mutual. The quote sheet indicated that it was a proposal for AGE with a proposed effective date of March 1, 1992. The quote sheet reflected

---

1. A medical stop-loss medical policy provides excess health insurance to a business which is self-insured for medical purposes. Under a medical stop-loss policy, the insurer reimburses the employer for such claims paid by it during the policy year to a single employee in excess of an amount fixed in the policy.

a specific deductible of $175,000; the number of AGE employees; the number of AGE employees with dependent coverage; and the amount of paid claims for the previous year. The quote sheet also contained six columns with premium rates. Three columns were entitled "active" and three were entitled "waive." Drew circled the rate of $3.21 in the 15/12 "active" column.

On February 20, 1992, Drew presented four proposals to AGE, including one from Boston Mutual. The policy offered by Boston Mutual would reimburse AGE for claims in excess of $175,000 that it paid during the policy year commencing March 1, 1992. The policy contained a 90–day run-in provision, under which claims incurred between December 1, 1991, and February 29, 1992, would be covered. D & H did not inform AGE that the proposed policy from Boston Mutual contained an "active-at work" provision.[2]

A representative from Boston Mutual met with AGE and D & H, however, the question of whether or not the policy being discussed contained an "active-at-work" provision was not raised by anyone. The next day, AGE accepted Boston Mutual's bid to provide medical stop-loss coverage for the policy year commencing March 1, 1992.

Shortly after the inception date of the Boston Mutual policy, AGE submitted three large claims to Boston Mutual. Boston Mutual refused to pay on the grounds that the policy (which had not been formally issued yet) contained an active-at-work provision, and that the employees to whom the claims related had not been actively at work for AGE on March 1, 1992.

AGE subsequently filed this lawsuit against D & H and Drew alleging breach of contract and breach of fiduciary duty. In its breach of contract claim, AGE alleged that AGE and D & H had an oral contract wherein D & H would obtain and deliver to AGE accurate quotations for medical stop-loss insurance. AGE further alleged that D & H and Drew were aware that AGE would not accept any medical stop-loss policy which contained an active-at-work provision because of the risk associated with obtaining such a policy. AGE averred that Drew presented it a proposal from Boston Mutual which was for a policy that included an active-at-work provision. According to AGE, Drew did not advise AGE that the proposal was for a policy which contained an active-at-work provision. AGE alleged that Drew and D & H breached the agreement by giving the wrong or inaccurate quotation and by not telling AGE that the quotation it was delivering was for a policy containing an active-at-work provision. AGE would not have purchased the Boston Mutual policy had it known the proposal or quotation contained an active-at-work provision. Instead, AGE would have renewed its policy with General American, which did not contain such a provision.

In its breach of fiduciary duty claim, AGE alleged that it entrusted to D & H and Drew the responsibility for obtaining and communicating accurately and completely the quotations of insurers willing to issue medical stop-loss insurance. AGE alleged that D & H and Drew breached their fiduciary duties by giving the wrong or inaccurate quotation, by not allowing AGE to see the quotations from Boston Mutual, and by not telling AGE that the quotation D & H was delivering was for a policy containing an active-at-work clause.

The jury returned a verdict for AGE on both claims and assessed AGE's damages at $581,645.40. The trial court entered judgment for AGE in the amount of the jury's verdict.

Following entry of judgment, AGE filed a motion for prejudgment interest and D & H filed a motion for credit for payment received. The trial court granted both motions, adding $157,191.69 for prejudgment interest and allowing D & H credit for AGE's settlement with Boston Mutual in the amount

---

2. Under a medical stop-loss policy with an active-at-work provision, the insurer is obligated to reimburse the employer only if the employee whose claims exceeded the trigger amount was "actively at work" on the first day the policy was in effect. Thus, an employee who is not working on the inception date of the policy would not have any coverage under a stop-loss policy with an active-at-work provision.

of $170,686.00. The net judgment against D & H was $568,151.09. This appeal follows.

■ In its first point, D & H contends the trial court erred in refusing to permit it to submit evidence of AGE's conduct because its conduct was relevant to the issue of damages. Specifically, D & H was precluded from introducing evidence that: 1) employees of AGE had knowledge of the magnitude of the Gary Parrish claim in January 1992, but failed to act upon that knowledge; 2) AGE could have paid certain bills incurred by Parrish prior to the inception date of the Boston Mutual policy, submitted the bills to General American and been reimbursed by General American; 3) Drew had not been made aware of the magnitude of the Parrish claim, as otherwise he would have advised AGE not to change stop loss carriers. In essence, D & H argues that since AGE knew about the medical expenses of Gary Parrish before March 1, 1992, it should have submitted his claims to General American before that policy expired. Thus, AGE could have reduced the amount of its claims under the Boston Mutual policy and thereby reduced its damages. According to D & H, AGE was contributorily negligent for failing to submit the Parrish claims to General American before its policy expired.

D & H made an offer of proof informing the trial court what the evidence would show. D & H stated that Brenda Signaigo, a senior benefits specialist with AGE, would have testified that she received a phone call from Parrish's wife on January 20, 1992. Mrs. Parrish also stated that her husband had been in the hospital since October 1991. D & H stated that Signaigo would have testified that she was aware on January 20, 1992 that Parrish had a serious illness which would have exceeded the stop-loss deductible of $175,000.

D & H would have also introduced the testimony of Marla Klopmeyer, another senior benefits specialist with AGE. Klopmeyer was aware that AGE had a stop-loss policy in effect in 1992 with a $175,000 deductible. Klopmeyer would have testified that if she had known that Parrish had a lung transplant she would want to make certain his claim was processed because she knew how important it was to process claims since AGE was self-insured and had a stop-loss carrier.

In addition, D & H would have introduced the testimony of Peggy Carson, an AGE employee responsible for obtaining stop-loss insurance. If Carson had been permitted to testify, she would have stated that if Signaigo had told her about the telephone call she received from Mrs. Parrish, she would have checked to see if a claim had been filed. If a claim had not been filed, Carson would have obtained the bill from the hospital, paid it, and presented it to General American for reimbursement. Carson would have stated that AGE could have been reimbursed by General American for Parrish's outstanding bill (less the $175,000 deductible) through the end of February 1992.

Further, D & H would have introduced the testimony of Robert Richter, an insurance underwriter for General American. Richter would have testified that had AGE followed up on the information it received in January regarding the Parrish claim, AGE could have paid those bills prior to March 1, 1992, and AGE could have submitted the bills to General American for reimbursement.

Finally, Drew would have testified that it would have been important to know about Parrish's condition on January 20, 1992. Drew would have also testified that had he known of the magnitude of the Parrish claim, he would have advised AGE to remain with General American.

The trial court precluded D & H from introducing this evidence, finding the evidence to be inadmissible because it was collateral and more prejudicial than probative. The trial court noted that the central issue for the jury to decide was whether the Boston Mutual policy contained an active-at-work clause, and not whether AGE should have submitted Parrish's claim to General American before the policy expired.

The trial court's ruling with respect to the acceptance or rejection of evidence will not be disturbed on appeal unless there is an apparent abuse of discretion. *O'Laughlin v. Barstow,* 654 S.W.2d 95, 97 (Mo.App.1983).

It is well settled that contributory negligence is no defense to a breach of contract action. *American Mortgage Investment Co. v. Hardin–Stockton Corp.*, 671 S.W.2d 283, 291 (Mo.App.1984); *Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635, 666 P.2d 192, 200 (1983); *Carter v. Hawaii Transportation Co.*, 201 F.Supp. 301, 303 (D.Hawai'i 1961); *Trinity Universal Insurance Co. v. Fuller*, 524 S.W.2d 335, 337 (Tex. Civ.App.—Dallas 1975); *Rotman v. Hirsch*, 199 N.W.2d 53, 56 (Iowa 1972); 17A C.J.S., Contracts S 525(1), p. 1018. Although the affirmative defense of contributory negligence in a breach of contract action does not act as a complete bar to recovery, the defense is relevant when the mitigation of damages is at issue. *American Mortgage*, 671 S.W.2d at 291; *Gateway Western Ry. Co. v. Morrison Metalweld Process Corp.*, 46 F.3d 860, 862 (8th Cir.(Mo.) 1995). Thus, the issue of a plaintiff's contributory negligence goes only to mitigation of damages. *See Ralston Purina Co. v. Home Ins. Co.*, 760 F.2d 897, 901 (8th Cir.(Mo.) 1985).

The duty to mitigate one's damages is a familiar concept in contract law. Generally, one damaged by breach of contract must make reasonable efforts to minimize his damages. *Spencer v. Millstone Marina, Inc.*, 890 S.W.2d 673, 677 (Mo.App.1994); *Wolf v. Missouri State Training School for Boys*, 517 S.W.2d 138, 142–43 (Mo.1974). The duty to mitigate damages, however, does not arise until the promisee learns that the contract has been breached. *Richardson v. Collier Bldg. Corp.*, 793 S.W.2d 366, 375 (Mo.App.1990)(citing *American Surety Co. of New York v. Franciscus*, 127 F.2d 810, 816 (8th Cir.(Mo.) 1942)).

D & H's proffered evidence related to conduct of AGE that occurred before AGE had any knowledge of D & H's breach of contract. AGE first learned of D & H's breach in the spring or summer of 1992, long after the time AGE could have submitted the claims to General American. What AGE might have done to mitigate its damages in January 1992 before it even knew of D & H's breach is irrelevant. As aptly stated in *American Surety*, "[r]easonable prudent action is required only after a breach of contract is known; 'not that action which the defendant, upon afterthought, may be able to show would have been more advantageous to him.'" 127 F.2d at 816 (quoting *The Thomas P. Sheldon*, 113 F. 779, 781 (D.R.I.1902)). The trial court did not abuse its discretion in excluding the evidence of AGE's alleged contributory negligence. D & H's first point is denied.

In its second point, D & H contends the trial court erred in refusing to allow it to submit evidence of AGE's settlement with Boston Mutual. We disagree.

At trial, D & H sought to introduce evidence that AGE agreed at the first settlement meeting with Boston Mutual that the total liability in excess of the deductibles was $512,058. Further, D & H sought to introduce evidence that Boston Mutual paid AGE the sum of $170,686 and that, as part of the settlement, Boston Mutual agreed to waive the active-at-work provision retroactive to March 1992. The trial court held that the evidence was collateral, irrelevant, and more prejudicial than probative.

D & H maintains that the trial court abused its discretion in excluding the settlement as it was relevant to the issue of whether the Boston Mutual policy had an active-at-work clause and to the issue of damages. D & H contends that the rationale for excluding evidence of settlements did not apply in this case.

Appellate courts give substantial deference to the decisions of trial courts as to the admissibility or exclusion of evidence, which will not be disturbed absent a showing of an abuse of discretion. *Murray v. Lamont*, 931 S.W.2d 899, 901 (Mo.App.1996). Where evidence is excluded, the issue is whether the trial court abused its discretion, not whether the evidence is admissible. *Howe v. ALD Services, Inc.*, 941 S.W.2d 645, 654 (Mo.App. 1997). Judicial discretion is abused when the ruling is clearly against the logic of the circumstances before it and is so unreasonable and arbitrary as to shock the sense of justice and indicates a lack of judicial consideration. *Sisk v. McIlroy and Associates*, 934 S.W.2d 567, 573 (Mo.App.1996).

To be grounds for reversal, trial court error in excluding evidence must be prejudicial and not harmless. *Murray,* 931 S.W.2d at 901. Further, an appellate court cannot reverse a judgment unless it finds the error committed by the court materially affected the merits of the action. *Id.*

▪ Generally, evidence of settlement agreements is not admissible. *O'Neal v. Pipes Enterprises, Inc.,* 930 S.W.2d 416, 423 (Mo.App.1995). Offers of settlement are inadmissible to prove liability for or invalidity of the claim or its amount. *In re Marriage of Clark,* 801 S.W.2d 496, 499 (Mo.App.1990).

▪ D & H argues that evidence of the settlement between AGE and Boston Mutual should have been admitted because Boston Mutual was a non-party. Proof of compromise or settlement with a third party, however, is not admissible to prove validity or invalidity of a claim. *Taylor v. Associated Elec. Co-op. Inc.,* 818 S.W.2d 669, 672 (Mo. App.1991); *Joice v. Missouri–Kansas–Texas R. Co.,* 354 Mo. 439, 189 S.W.2d 568, 575 (Mo.1945).

D & H also contends that evidence of Boston Mutual's settlement with AGE should have been admitted to establish whether the Boston Mutual policy had an active-at-work provision and damages. Although evidence of settlements is admissible where such evidence is utilized for another purpose, such as proving bias or prejudice of a witness, statements relating to the execution, terms, or performance of a contract are often held inadmissible because they are made in the course of compromise negotiations. *See* A.E. Korpela, Annotation, *Admissibility of Admissions Made in Connection with Offers or Discussions of Compromise,* 15 ALR3d 13, section 9(b) (1967). Further, even though the amount of the settlement may have been relevant on the limited issue of the extent of AGE's recovery, D & H was not prejudiced by its exclusion in that the trial court later gave D & H credit for the amount of the settlement.

The trial court's ruling was not against the logic of the circumstances. It was not arbitrary and unreasonable. The trial court did not abuse its discretion in refusing to admit evidence of the settlement between AGE and Boston Mutual. Point two is denied.

▪ In its third point, D & H contends that the trial court erred in denying its motions for directed verdict or judgment notwithstanding the verdict because AGE failed to make a submissible case. D & H argues that the trial court erred in submitting AGE's breach of contract claim to the jury in that AGE failed to prove the element of breach. D & H maintains that AGE failed to prove D & H provided the wrong or inaccurate quotation or that the quotation provided was for a policy with an active-at-work provision and also failed to prove a causal connection between the quotation and the damages sustained by AGE. D & H also contends that AGE submitted an erroneous instruction to the jury relating to the breach of contract action.

In reviewing whether the trial court erred in submitting AGE's breach of contract claim to the jury, we must determine whether or not it presented substantial evidence at trial to support its theory of recovery. *Elsberry v. Boulevard Motors, Inc.,* 886 S.W.2d 732, 735 (Mo.App.1994). Further, we must view all evidence presented at trial in the light most favorable to AGE, giving it the benefit of all reasonable inferences, and disregarding all evidence unfavorable to it. *Id.*

D & H first argues that AGE failed to make a submissible case on breach of contract because AGE failed to prove that D & H provided the wrong or inaccurate quotation or that the quotation was for a policy that contained an active-at-work provision. We disagree.

Kathy Pickett, a D & H employee, testified that after the dispute arose about whether the Boston Mutual policy contained an active-at-work provision, she reviewed D & H's entire file. Based upon the information contained in the file, Pickett concluded that the policy Drew had quoted and sold to AGE was an "active-at-work" policy. Pickett further testified that prior to March 1, 1992, she had received a specimen policy from Boston Mutual which included an active-at-work provision.

John Drew testified that he received a "quote sheet" from Boston Mutual in February 1992. The quote sheet contained six columns of premium quotations, three with the caption "Active" and three with the caption "Waive." Drew circled one of the premiums under the "Active" caption, signed the quote sheet, and sent it back to Boston Mutual. Drew testified that Boston Mutual understood that he was asking for a policy containing an active-at-work provision by circling a premium quoted under an "Active" caption.

There was sufficient evidence presented to establish that D & H provided the wrong or inaccurate quotation or that the quotation was for a policy which contained an active-at-work provision.

D & H also argues that AGE failed to make a submissible breach of contract claim in that it failed to prove a causal connection between the quotation and the damages sustained by AGE. We disagree.

D & H agreed to present to AGE proposals and price quotations for stop-loss medical insurance. As part of that agreement, D & H was to inform AGE of all the important terms of the proposals it was presenting to AGE. D & H acknowledged that an active-at-work provision was an important term. D & H breached that obligation by presenting a proposal to AGE from Boston Mutual without disclosing that the proposal included an "active-at-work" policy. The evidence demonstrated that had AGE known that the Boston Mutual proposal was for an "active-at-work" policy, it would not have purchased the policy from Boston Mutual. Instead, AGE would have renewed its policy with General American which did not have an active-at-work provision. If AGE had renewed its General American policy, the claims that Boston Mutual refused to pay would have been paid. There was sufficient evidence that AGE's damages were causally related to D & H's breach.

■ D & H also contends the trial court erred in giving Instruction No. 8, the verdict-director submitted by AGE. That instruction, patterned after MAI 26.02, read:

Your verdict must be for A.G. Edwards & Sons, Inc. on its Breach of Contract Claim if you believe:

First, Defendants The Daniel and Henry Co. and John R. Drew gave Plaintiff A.G. Edwards & Sons, Inc. the wrong or inaccurate quotation for the Boston Mutual Policy mentioned in the evidence or failed to tell A.G. Edwards & Sons, Inc. that the quotation it was delivering regarding Boston Mutual was for a policy containing an active at work clause, and

Second, because of such failure, defendants' contract obligations were not performed, and

Third, plaintiff A.G. Edwards & Sons, Inc. was thereby damaged.

D & H contends the trial court erred in submitting this instruction because the instruction failed to hypothesize the terms of the agreement. D & H maintains that AGE should have submitted an instruction based on MAI 26.06 wherein the question of what constituted the agreement could have been decided by the jury. We disagree.

MAI 26.02 is to be used where the existence and terms of a contract are undisputed and the sole issue is whether defendant breached the contract. *Porta–Fab Corp. v. Young Sales Corp.*, 943 S.W.2d 686, 689 (Mo. App.1997). MAI 26.06 is appropriate where there is a dispute as to 1) what agreement was made, and 2) whether that agreement was breached. *Id.* Where the terms of a contract are at issue, the appropriate instruction to use is MAI 26.06. *Id.* The submission of MAI 26.02, when MAI 26.06 is the applicable instruction, constitutes prejudicial error. *Id.*

■ D & H refers to no evidence to support its contention that there was a dispute regarding the terms of the contract. In fact, Drew admitted the material terms of the contract. It is not necessary that a verdict-directing instruction hypothesize facts about which there is no dispute. *Leh v. Dyer*, 643 S.W.2d 65, 68 (Mo.App.1982). As there was no dispute regarding the terms of the agreement, MAI 26.02 was the appropriate instruction. The trial court did not err in

submitting Instruction No. 8. Point three is denied.

In its fourth point, D & H contends the trial court erred in submitting AGE's claim for breach of fiduciary duty to the jury in that no fiduciary relationship existed between AGE and D & H. D & H also contends that the trial court erred in submitting AGE's verdict directing instruction in that it was beyond the scope of AGE's pleadings.

■ D & H maintains that in order for AGE to submit its breach of fiduciary duty claim to the jury it was incumbent upon AGE to prove that a fiduciary relationship existed between it and D & H. D & H claims that in order for a fiduciary relationship to exist, there must be evidence of a special trust with respect to the property or business, and stemming therefrom, an exercise of influence which breaks the willpower of the person over influenced.[3] Since there was no evidence that AGE surrendered its independence to D & H, D & H argues that AGE failed to establish the existence of a fiduciary relationship.

■ Under Missouri law, a fiduciary relationship consists of the following elements: (1) one party must be subservient to the dominant mind and will of the other party as a result of age, state of health, illiteracy, mental disability, or ignorance; (2) things of value such as land, monies, a business, or other things of value, which are the property of the subservient party, must be possessed or managed by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic and habitual manipulation of the actions of the subservient party by the dominant party; and (5) there must be a showing that the subservient party places a trust and confidence in the dominant party. *Matlock v. Matlock*, 815 S.W.2d 110, 115 (Mo.App.1991).

■ There are, however, instances in which a fiduciary relationship exists absent the above elements. "A fiduciary relationship may arise as a matter of law by virtue of the parties' relationship, e.g., attorney-client, or it may arise as a result of the special

circumstances of the parties' relationship where one places trust in another so that the latter gains superiority and influence over the former." *State Security Insurance Co. v. Frank B. Hall & Co.*, 258 Ill.App.3d 588, 196 Ill.Dec. 775, 630 N.E.2d 940, 945 (1 Dist. 1994). For example, one type of legal relationship in which a fiduciary duty of confidentiality may exist absent the above elements is the physician-client relationship. *See Brandt v. Medical Defense Assocs.*, 856 S.W.2d 667, 669–671 (Mo. banc 1993). A fiduciary relationship may also exist in the attorney-client setting absent the listed elements. *See Shaffer v. Terrydale Management Corp.*, 648 S.W.2d 595, 605 (Mo.App. 1983).

■ Another type of legal relationship that is universally recognized as being fiduciary in nature is the relation of an agent to his principal. An agency is a fiduciary relationship between two legal entities whereby the principal has the right to control the conduct of the agent, and the agent has the power to affect the legal relations of the principal. Restatement (Second) of Agency sections 1, 12, 13 (1958). An agent is a fiduciary with respect to matters within the scope of his agency. *Preferred Physicians Mut. Management Group v. Preferred Physicians Mut. Risk Retention*, 918 S.W.2d 805, 811 (Mo.App.1996).

■ Although our research has not revealed any Missouri case holding that an insurance broker owes a fiduciary duty to an insured, other jurisdictions have held that the relationship between an insured and an insurance broker is a fiduciary one. *See Faulkner v. Gilmore*, 251 Ill.App.3d 34, 190 Ill.Dec. 455, 621 N.E.2d 908, 911 (3 Dist. 1993); *Economy Fire & Cas. Co. v. Bassett*, 170 Ill.App.3d 765, 121 Ill.Dec. 481, 525 N.E.2d 539 (5 Dist.1988); *Butler v. Scott*, 417 F.2d 471, 473 (10th Cir.1969). Under Missouri law, an insurance broker is ordinarily the agent of those for whom insurance is procured. *Weekly v. Missouri Property Ins. Placement Facility*, 538 S.W.2d 375, 379 (Mo. App.1976); *Lampkin v. Kelly*, 771 S.W.2d 953, 954 (Mo.App.1989). When an insurance

---

**3.** *See Masoner v. Bates County National Bank,* 781 S.W.2d 235, 239 (Mo.App.1989).

broker agrees to obtain insurance for a client, with a view to earning a commission, the broker becomes the client's agent and owes a duty to the client to act with reasonable care, skill, and diligence. *Bell v. O'Leary,* 744 F.2d 1370, 1372 (8th Cir.(Mo.) 1984); *Barnes v. Metropolitan Life Ins. Co.,* 612 S.W.2d 786, 787 (Mo.App.1981).

As AGE's agent, D & H owed it a fiduciary duty with respect to procuring an insurance policy according to AGE's wishes. As such, it was not incumbent upon AGE to adduce evidence that it surrendered its independence to D & H. Once an agency relationship has been established, a fiduciary relationship arises as a matter of law. Accordingly, D & H's claim that no fiduciary relationship existed between it and AGE is without merit.

■■■ D & H also contends that the trial court erred in submitting Instruction No. 12, AGE's verdict directing instruction for its breach of fiduciary duty claim, in that the instruction submitted a theory beyond the scope of the pleadings. We find no merit to D & H's challenge to AGE's verdict directing instruction. This objection was not raised at the instruction conference nor in the motion for new trial. At the instruction conference, D & H objected to the submission of Instruction No. 12 on the grounds that a breach of fiduciary duty claim did not lie under the facts of the case and that the instruction failed to hypothesize the fact that the policy presented to AGE contained an active-at-work clause. In its motion for new trial, D & H challenged the submission of Instruction No. 12 on the grounds that no fiduciary relationship existed as a matter of law and that the instruction failed to require a finding that the policy had an active-at-work clause. Because D & H did not make its current objection at trial or in its motion for new trial, this issue was not preserved for appellate review. Rule 70.03; *Farley v. Wappapello Foods, Inc.,* 959 S.W.2d 888, 893 (Mo. App.1997); *Garrett v. Overland Garage & Parts, Inc.,* 882 S.W.2d 188, 191 (Mo.App. 1994). Point four is denied.

■■■ In its fifth point, D & H contends the trial court erred in giving an incorrect measure of damages instruction to the jury. Specifically, D & H argues that AGE ten-

dered, and the trial court gave, an improper damage instruction patterned after MAI 4.01. D & H maintains that MAI 4.01 is only proper when both personal injury and property damage are claimed. Since this case did not involve a personal injury, D & H contends it was error to give an instruction based upon MAI 4.01. D & H also contends that MAI 4.01 can only be used in breach of contract cases when the phrase "breach of contract" is substituted for the phrase "occurrence mentioned in the evidence" in the instruction. D & H argues that the trial court's failure to modify MAI 4.01 resulted in giving the jury a roving commission to award damages beyond those caused by the breach. Specifically, D & H contends that the jury was permitted to award damages both for the claims that would have been paid had the Boston Mutual policy been issued as requested with no active-at-work provision and for claims which unquestionably would not have been covered had the Boston Mutual policy been issued as requested.

AGE tendered, and the trial court gave, Instruction number 7 on the issue of damages. Instruction No. 7 read:

> If you find in favor of Plaintiff, A.G. Edwards & Sons, Inc., then you must award Plaintiff such sum as you believe will fairly and justly compensate Plaintiff for any damages you believe it sustained as a direct result of the occurrence mentioned in the evidence.

Generally, MAI 4.01 should only be given where there has been damage to both the person and property. *Kelley v. Kelly Residential Group, Inc.,* 945 S.W.2d 544, 552 (Mo.App.1997). There is, however, authority which holds that MAI 4.01 is the correct damage instruction in breach of contract actions. *Metro Waste Systems, Inc. v. A.L.D. Services, Inc.,* 924 S.W.2d 335, 337 (Mo.App. 1996). Thus, D & H's contention that MAI 4.01 should only be used in cases where both personal injury and property damage are claimed is without merit.

D & H next claims that the trial court's failure to modify the phrase "occurrence mentioned in the evidence" with the phrase "breach of contract" gave the jury a roving

commission to award damages beyond those caused by the breach. D & H contends that MAI 4.01 may be used in breach of contract cases only when the instruction is modified with the phrase "breach of contract." Although there is authority for the proposition that MAI 4.01 may be used in breach of contract actions when modified to substitute "breach of contract" for "occurrence mentioned in the evidence,"[4] D & H has not cited us to any authority which holds that MAI 4.01 may *only* be used in a breach of contract action if the phrase "breach of contract" is substituted for "occurrence mentioned in the evidence."[5]

D & H objected to the submission of Instruction No. 7 on the grounds that it gave the jury a roving commission and that the instruction was vague. D & H, however, did not offer a specific descriptive phrase to substitute for the phrase "occurrence mentioned in the evidence." Nor did D & H offer a proposed modified instruction.

In *Hudson v. Carr*, 668 S.W.2d 68, 71–72 (Mo. banc 1984), the appellant argued that the phrase "as the direct result of the occurrence mentioned in the evidence" should have been modified. In rejecting the appellant's argument, the court stated:

> Had the defendant really considered that there was substantial prejudice in the instruction, so that he would be less able to present his contentions to the jury, he could have pointed out the problem highlighted by Note on Use No. 3 to MAI 4.01 and could have requested a clarification, or could have submitted his own instruction containing the modification he considered appropriate. Contemporaneous objections to instructions are not required to preserve claims of legal error (Rule 70.03), but failure to raise the issue during trial or to request a modification may be considered in determining whether a variation from MAI is prejudicial. This is especially so when the court gives a text instruction in express terms and the deviation consists in a failure to modify it. If a defect is not

readily apparent to alert counsel preparing to argue the case, there is very little likelihood that the jury will be confused or misled. Counsel should think twice before simply putting perceived deviations from MAI or the Notes on Use into the error bag, instead of asking for a more satisfactory instruction.

*Id.* at 71–72.

This court should reverse only for defects of substance with substantial potential for prejudicial effect. *Smith v. Kovac*, 927 S.W.2d 493, 499 (Mo.App. E.D.1996). Based upon the above analysis, we find neither error nor prejudice. Point five is denied.

■ In its sixth point, D & H argues that the trial court erred in awarding prejudgment interest to AGE. Appellant contends that an award of prejudgment interest is allowable only if authorized by a contract or statute.

■ Judgments do not bear interest either as a matter of legal right or under the common law. 47 C.J.S. *Interest & Usury* section 23 (1982). Any allowance of interest, therefore, must be based upon either a statute or a contract, either express or implied. *Denton Const. Co. v. Missouri State Highway Commission*, 454 S.W.2d 44, 59 (Mo. 1970); *St. John's Bank & Trust Co. v. Intag, Inc.*, 938 S.W.2d 627, 630 (Mo.App.1997).

It is not contended, nor do we find, that the agreement between AGE and D & H, in which D & H was to act as insurance broker for the purpose of procuring medical stop-loss insurance, contained any reference toward interest. Therefore, if interest is awarded, it must be based upon statute.

Section 408.020, RSMo 1994[6] provides that creditors will be allowed to receive interest, at the rate of nine percent per annum if not otherwise stipulated, on all accounts after they become due and demand of payment is made. The "account" concept under the statute is not limited to traditional account scenarios. *See Denton Const. Co.*, 454 S.W.2d at 59 (quantum meruit claim held to

---

4. *See Leh v. Dyer*, 643 S.W.2d 65, 67 (Mo.App. 1982).

5. *See Metro Waste Systems*, 924 S.W.2d at 337 (use of MAI 4.01 was not error in breach of contract case even though phrase "breach of

contract" was not substituted for "occurrence mentioned in the evidence.").

6. All citations are to the 1994 Revised Statutes of Missouri unless otherwise indicated.

be an account under the statute); *Schnucks Markets, Inc. v. Cassilly*, 724 S.W.2d 664, 668 (Mo.App.1987) (claim on express oral contract held to be an account under the statute).

 As used in section 408.020, "account" is regarded as equivalent to "claim" or "demand." *Burger v. Wood*, 446 S.W.2d 436, 443 (Mo.App.1969). A demand is essential to the right to recover on such accounts. *Transamerica Ins. v. Pennsylvania National Insurance Companies*, 908 S.W.2d 173, 175 (Mo.App.1995). Although the demand need be in no certain form, it must be definite as to amount and time. *Id.* If no such demand is made for payment of an unwritten account, the filing of the suit substitutes for the previous demand. *Id.* In the absence of a demand for payment of an unwritten account, the filing of the suit substitutes for the previous demand, and starts the interest bearing period, to be computed as of the date of the verdict. *Weekley v. Wallace*, 314 S.W.2d 256, 257 (Mo.App.1958).

Section 408.020 is applicable to the parties. No demand was made for the payment of the medical bills, however, AGE's filing of its suit against D & H was sufficient to trigger section 408.020 and the awarding of prejudgment interest. AGE's petition specifically set out an exact dollar figure of the damages caused by D & H's failure to procure a proper insurance policy without an active-at-work provision. The filing of the suit by AGE substitutes for a demand of payment on the unwritten account. Therefore, an award of prejudgment interest is allowable under section 408.020.

 Even though AGE's action falls within the purview of section 408.020, in order for interest to be awarded, the claim must be liquidated. *Holtmeier v. Dayani*, 862 S.W.2d 391, 406 (Mo.App.1993). In order for a claim to be liquidated so as to allow interest, the claim must be readily determinable. *Id.* It is sufficient if the claim is ascertainable by computation. *Id.* Moreover, the mere interposition of an unliquidated counterclaim or set-off does not necessarily convert the liquidated claim into an unliquidated claim. *Burger*, 446 S.W.2d at 444.

 Here, the damages were readily determinable and ascertainable by computation.

The damages were simply the commission paid to D & H by AGE and the amount of medical bills, minus the deductible, that were not covered under the Boston Mutual insurance policy due to the presence of the active-at-work provision.

 Moreover, an award of less damages than requested does not preclude an award of prejudgment interest on the ascertained damages. *Catron v. Columbia Mutual Ins. Co.*, 723 S.W.2d 5, 6 (Mo.banc 1987). Even though the damages awarded were less than those sought by AGE, the trial court is not precluded from awarding prejudgment interest. Equitable principles of fairness and justice may guide the court when it is determining whether to award prejudgment interest. *Weinberg v. Safeco Ins. Co. of Illinois*, 913 S.W.2d 59, 62 (Mo.App.1995).

The damage award was ascertainable by simple computation, and the award of prejudgment interest is supported by statute. Therefore, prejudgment interest was correctly awarded. Point six is denied.

The judgment of the trial court is affirmed.

CRANE, P.J. and HOFF, J., concur.