Richard J. SISCO, Plaintiff/Appellant,

v.

THE BOARD OF TRUSTEES OF THE POLICE RETIREMENT SYSTEM OF ST. LOUIS, et al., Defendants/Respondents.

No. ED 77049.

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 29, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 2, 2000.

Application for Transfer Denied Dec. 5, 2000.

---

J.W. Gabriel, St. Louis, for appellant.

**116**

Mark Lawson, St. Louis, for respondents.

CLIFFORD H. AHRENS, Presiding Judge.

Richard J. Sisco ("Officer Sisco") filed an action against the Board of Trustees of the Police Retirement System of the City of St. Louis ("Board of Trustees")[1] seeking a declaratory judgment that the Board of Trustees was not permitted, under section 86.297 RSMo (1994),[2] to offset his workers' compensation against his disability retirement allowance where both benefits were receivable on account of the same injury. Following a bench trial, the Circuit Court of the City of St. Louis entered judgment allowing the offset, but reducing the amount of workers' compensation to be applied as an offset by the amount of attorney's fees and related expenses incurred by Officer Sisco in connection therewith. The judgment also reduced the amount of retirement benefits subject to setoff by Officer Sisco's "accumulated contributions" to the Police Retirement System of the City of St. Louis ("Retirement System"). Officer Sisco appeals the judgment insofar as it allows the offset. The Board of Trustees cross-appeals to the extent the judgment excludes the attorney's fees and accumulated contributions from the offset calculation. We affirm.

Officer Sisco was commissioned as a police officer by the Board of Police Commissioners of the City of St. Louis ("Board of Police Commissioners") in June 1967. As a condition of employment, Officer Sisco was required to become a member of the Retirement System. Section 86.207. As a member, Officer Sisco was obligated to contribute seven percent of his salary for each pay period into the "members' savings fund." Section 86.320. Such contributions were entitled to earn interest, section 86.303, with the sum of the two to be

known as his "accumulated contributions." Section 86.200.1(1). When a member is entitled to receive benefits from the Retirement System, other than benefits consisting solely of a refund of that member's contributions, such benefits are paid from the "benefit reserve fund." Section 86.323. The benefit reserve fund consists of a member's accumulated contributions, which are transferred from the members' savings fund at the time the payment of benefits is approved, plus an "additional amount from the general reserve fund as is calculated by the actuary to be necessary with the member's contributions to provide the payment of all benefits arising from the service of such member." Section 86.323. Monies in the general reserve fund are contributed by the City. Section 86.327.

In January 1985, Officer Sisco was severely and permanently injured in a motor vehicle accident while on duty. In April of that year, Officer Sisco filed a claim for workers' compensation under chapter 287 RSMo. For reasons not apparent to this court from the record, such claim was not heard by the Division of Workers' Compensation until December 1992. Meanwhile, the Board of Trustees retired Officer Sisco on August 1, 1986, pursuant to section 86.263, because his injuries rendered him totally and permanently incapacitated for the further performance of duty. On the same date, Officer Sisco began receiving a disability retirement allowance pursuant to section 86.267.1 in the amount of $1,670.40 per month.

In March, 1993, the Division of Workers' Compensation awarded to Officer Sisco: (1) $25,071.40 for medical expenses;[3] (2) 75 ½ weeks of temporary total disability benefits at $222.73 per week ($16,736.57); (3) permanent total disability benefits of

---

**1.** References to the "Board of Trustees" include its individual members, who were also named as defendants.

**2.** All statutory references herein are to RSMo (1994) unless otherwise indicated.

**3.** This amount had already been paid by the Board of Police Commissioners and was not applied as an offset against Officer Sisco's disability retirement allowance.

$222.73 per week for the remainder of his life; and (4) 344 weeks of past-due permanent total disability benefits at 222.73 per week ($76,619.12). This award was not appealed and therefore became final thirty days thereafter. Section 287.495. Officer Sisco did not begin receiving his benefits until January 1996, however, again for reasons not apparent from the record. As payment for amounts past due under categories (2) and (4), plus interest thereon, Officer Sisco received a lump-sum payment of $131,679.65.

Because Officer Sisco was receiving both workers' compensation and disability retirement benefits for the same injury, the Board of Trustees elected to offset the former against the latter pursuant to section 86.297, which provides in relevant part:

> Any amounts which may be paid or payable by the [City of St. Louis] under the provision of any workers' compensation or similar law to a member ... on account of any disability ... shall be offset against and payable in lieu of any benefits payable out of funds provided by the [City of St. Louis] under the provisions of sections 86.200 to 86.363 on account of the same disability.... [4]

The offset became effective January 1, 1996, and consisted of two separate reductions to Officer Sisco's monthly disability retirement allowance of $1,670.40. First, such amount would be permanently reduced by $965.16, the average amount he was to receive per month as permanent total disability workers' compensation benefits.[5] Second, the amount would be temporarily reduced by $705.24 (the amount remaining after $965.16 is deducted) until the $131,679.65 lump-sum payment for past-due workers' compensation is recouped.[6] The underlying declaratory judgment action followed.

Officer Sisco raises four points of error, each challenging the application of section 86.297. The Board of Trustees raises two points of error, challenging the exclusion from the setoff calculation of attorney's fees and accumulated contributions, respectively. Our standard of review of this court-tried case is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976): we will affirm the judgment of the trial court unless it is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. We will first address Officer Sisco's points, then those of the Board of Trustees.

In his first point, Officer Sisco claims the trial court erroneously applied section 86.297 because his workers' compensation benefits are not "paid or payable" by the City of St. Louis ("City"), as required by that section. Officer Sisco's argument is premised on section 287.120.1, which holds a worker's employer liable to furnish workers' compensation.[7] Officer Sisco contends the Board of Police Commissioners, and not the City, was his employer, such that the City had no obligation to furnish work-

---

4. The bracketed term "[City of St. Louis]" replaces the phrase "the said cities," which means those cities having on October 1, 1957, or which thereafter attain, a population of 700,000 inhabitants or more. *See* section 86.203. Although the City of St. Louis no longer has such a population, it did as of the relevant date, such that sections 86.200—.363, those sections of chapter 86 RSMo governing police retirement systems in cities having a population of 700,000 inhabitants or more, still apply. *See State ex rel. McNeal v. Roach*, 520 S.W.2d 69, 75 (Mo. banc 1975) (finding, in accordance with legislative intent, that a subsequent decrease in population does not affect the applicability of statutes govern-

ing cities which at one time had a population of 700,000 inhabitants or more).

5. The calculation is as follows: $222.73 (amount to be received per week) multiplied by 52 (weeks in one year) divided by 12 (months in one year) equals $965.16 per month.

6. This would take approximately 15½ years.

7. Section 287.030.2 provides, "Any reference to the employer shall also include his insurer."

ers' compensation under chapter 287 RSMo.

■ We agree that the Board of Police Commissioners was Officer Sisco's employer.[8] We disagree, however, that the City had no obligation to furnish workers' compensation. Although the Board of Police Commissioners, as Officer Sisco's employer, was required to furnish his workers' compensation pursuant to section 287.102.1, it pays its expenses with funds received from the City, which the City is obligated by statute to provide. *See* sections 84.160.5 and .210 RSMo (1994 & Cum.Supp.1999). For purposes of section 86.297, therefore, Officer Sisco's workers' compensation benefits are "payable" by the City.

Our holding in this regard is consistent with the Missouri Supreme Court's interpretation of section 86.297 that only the portion of workers' compensation payments that represents lost wages should be used to offset retirement benefits. *Sheldon v. Board of Trustees of Police Retirement System*, 779 S.W.2d 553 (Mo. banc 1989). In that case, the Court stated that the purpose of section 86.297 "is to prevent double compensation for one injury, thus giving the injured person a windfall." *Id.* at 557. In the present case, Officer Sisco's disability retirement allowance and his workers' compensation benefits serve to compensate him for lost wages as a result of service-related injuries sustained in January 1985. Consequently, the purpose of section 86.297 would be frustrated by refusing to allow the offset.

In his second point, Officer Sisco argues the setoff was improper because it effectively forces him to fund his workers' compensation benefits in violation of section 287.290, which provides, "No part of the cost of [workers' compensation] insurance shall be assessed against, collected from or paid by any employee." Because we hold that Officer Sisco's accumulated contributions are not subject to setoff, *see* the Board of Trustee's second point relied on, *infra*, he is receiving them in addition to his workers' compensation benefits, not in lieu thereof. In no way is he paying any portion of his workers' compensation benefits. Accordingly, this point is without merit.

■ Officer Sisco's third point contends the offset was improper for equitable reasons. As he correctly observes, police officers are the only class of City "servants" whose disability retirement benefits are subject to an offset by workers' compensation. Accordingly, he argues, the statute is "patently inequitable, unfair, and unjust."

■ When construing a statute, the court's goal is to give effect to the intent of the legislature in enacting the statute. *Maudlin v. Lang*, 867 S.W.2d 514, 516 (Mo. banc 1993). Our initial task, therefore, is to ascertain that intent. *Id.* We do this by first consulting the language of the statute, giving its terms their plain and ordinary meaning. *Id.* If the language is unambiguous, that is, it is plain and clear to one of ordinary intelligence, *Williams*

---

8. The determination of whether an employer-employee relationship exists is generally based on the potential employer's "right of control" over the potential employee. *Davis v. Human Development Corp.*, 705 S.W.2d 540, 542 (Mo.App.1985). Although the compensation of officers of the St. Louis Metropolitan Police Department is ultimately paid by the City, *see* section 84.160.5 RSMo (1994 & Cum.Supp.1999), the Board of Police Commissioners determines that compensation (within statutory limits). *See* section 84.160 RSMo (1994 & Cum.Supp.1999). Moreover, only the Board of Police Commissioners has

authority to appoint and discipline police officers. *See* sections 84.100 and .170.2. The Board of Police Commissioners had a greater right of control over Officer Sisco than did the City and, thus, was his employer. This finding is consistent with *Sheldon v. Board of Trustees of Police Retirement System*, 779 S.W.2d 553, 554 (Mo. banc 1989), which noted—without analysis—that the Board of Police Commissioners employs officers of the St. Louis Metropolitan Police Department and is, therefore, liable for their workers' compensation.

*v. State, Dept. of Soc. Serv., Div. of Family Serv.,* 978 S.W.2d 491, 493 (Mo.App. 1998), we are generally constrained to apply it as written and may not resort to rules of construction. *Garland v. Director of Revenue,* 961 S.W.2d 824, 827 (Mo. banc 1998); *Bosworth v. Sewell,* 918 S.W.2d 773, 777 (Mo. banc 1996). We will, however, resort to rules of construction where the terms of the statute: (1) are ambiguous; or (2) are unambiguous, but, when given their ordinary meaning, produce an illogical or absurd result in light of the statute's purpose. *Vocational Serv., Inc. v. Developmental Disabilities Resource Bd.,* 5 S.W.3d 625, 630 (Mo.App.1999); *Spradlin v. City of Fulton,* 982 S.W.2d 255, 258 (Mo. banc 1998).

Officer Sisco contends section 86.297 is "poorly drafted." We disagree. The statute plainly provides for an offset of workers' compensation benefits against benefits paid from the Retirement System where both are paid on account of the same injury. The fact that the General Assembly subjected the disability retirement benefits of police officers to an offset but not those of other servants of the City, e.g., fireman, does not create an ambiguity. Because the statute is unambiguous, however, we cannot disregard its plain meaning in favor of a rule of construction.[9]

In his fourth and final point, Officer Sisco contends the offset was improper because there was no substantial evidence adduced at trial to show that the City contributed funds to the Retirement System. Section 86.287 permits workers' compensation to be offset only against "funds provided by the [City]." There being no evidence that the City actually pro-

vided such funds, Officer Sisco argues there could be no offset.

■ As previously discussed, Officer Sisco's disability retirement allowance is paid from the benefit reserve fund, which consists of his accumulated contributions of $34,124.98 plus an additional amount from the general reserve fund as has been calculated to be necessary to provide for the full payment of his benefits. *See* section 86.323. Such additional amount is required by statute to be contributed by the City. *See* section 86.327. According to our calculations, Officer Sisco received a total of $187,040.80 in disability retirement benefits prior to the offset.[10] The record does not indicate what portion of this amount represented a return of Officer Sisco's accumulated contributions. This does not matter, however, because the amount received by Officer Sisco as retirement benefits greatly exceeded the amount of his accumulated contributions. Section 86.327 obligates the City, and only the City, to provide this additional amount. Accordingly, evidence that Officer Sisco received retirement benefits in excess of the amount of his accumulated contributions is sufficient to establish that the City contributed funds to the Retirement System, making the offset proper.

■ In its first point of error on cross-appeal, the Board of Trustees contends the trial court erroneously applied section 86.297 by reducing the amount of the workers' compensation award to be offset against retirement benefits by the attorney's fees and related expenses incurred by Officer Sisco. We disagree. Under *Sheldon,* "[t]he purpose of this setoff is to prevent double compensation for one injury, thus giving the injured person a wind-

9. There exists a rule of construction that admonishes courts to avoid construing statutes in a manner that produces an unjust or unreasonable result. *See, e.g., Rusk v. Rusk,* 859 S.W.2d 751, 753 (Mo.App.1993). We emphasize, however, that where a statute is unambiguous, there is nothing for the court to construe. *See Brownstein v. Rhomberg–Haglin & Assoc., Inc.,* 824 S.W.2d 13, 15 (Mo. banc 1992).

10. Our calculation is as follows: $1,670.40 (monthly disability retirement allowance) multiplied by 112 months (August 1, 1986 through December 1, 1995) equals $187,084.80. The trial court's findings of fact state that Officer Sisco received a total of $131,679.65 in disability retirement benefits prior to the offset. Because the record contains no evidence to support this figure, we will adhere to our calculation.

fall." 779 S.W.2d at 557. In *Sheldon,* the court did not allow the "Pension System to offset its payments made under worker's compensation for nursing care." *Id.* The court held that payment for nursing care did not double compensate the claimant fulfilling the purpose of section 86.297. *Id.*

In the present case, the trial judge excluded attorney's fees and expenses from the offset provision in accord with *Sheldon.* To the extent that Officer Sisco had to pay attorney's fees and related expenses to obtain his workers' compensation award, he did not receive a windfall. Officer Sisco's workers' compensation award was subject to a lien in the amount of 25% in favor of his attorney. The award amount subject to the lien will not go to Sisco but to his attorney; therefore, Sisco is not receiving a windfall. The trial court correctly reduced Officer Sisco's workers' compensation offset by the attorney's fees and related expenses incurred in connection with his workers' compensation claim.

■ The Board of Trustees' second point contends the trial court erroneously applied section 86.297 by excluding Officer Sisco's accumulated contributions from the amount of retirement benefits subject to setoff. Section 86.297 authorizes the offset of workers' compensation against "any benefits payable out of *funds provided by the [City]* [emphasis added]." We have already established that Officer Sisco's retirement benefits were paid with his accumulated contributions plus an additional amount provided by the City. *See* sections 86.323, .327. Obviously, the latter amount constituted "funds provided by the City" and, therefore, was subject to setoff.[11] Conversely, Officer Sisco's accumulated contributions were not funds provided by the City, and, therefore, were properly excluded from the setoff calculation by the

trial court. "Accumulated contributions" represent the sum of: (1) a member's direct contributions to the Retirement System; and (2) the interest thereon. *See* section 86.200.1(1) RSMo (1994 & Cum. Supp.1999). Of Officer Sisco's accumulated contributions of $34,124.98, $20,090.86 represents his direct contributions to the Retirement System. Clearly, these were not funds provided by the City. The remaining $14,034.12 represents interest. Section 86.303 provides (with emphasis added):

> The board of trustees annually shall allow regular interest on the mean amount for the preceding year in each of the funds with the exception of the expense fund. The amount so allowed shall be due and payable to said funds and shall be annually credited thereto by the board of trustees *from interest and other earnings on the moneys and other assets of the retirement system. ...*

As the italicized language indicates, the interest credited to Officer Sisco's contributions to the Retirement System was not paid from funds provided by the City.

Despite the plain meaning of "funds provided by the City," the Board of Trustees argues the legislative intent of section 86.297 is to subject accumulated contributions to an offset even though they are not provided by the City. The Board of Trustees directs our attention to three provisions of chapter 86 RSMo which specifically provide for the repayment of members' contributions to the Retirement System and, in certain situations, the interest thereon: section 86.253.4 RSMo (1994 & Cum.Supp.1999), section 86.267.4 RSMo (Cum.Supp.1999), and section 86.290.[12] The Board of Trustees argues that, by enacting these provisions, the General Assembly intended to return contributions

11. This amount is unknown but irrelevant for purposes of this appeal.

12. Section 86.253.4 requires the repayment of the total amount of a member's contribution to the Retirement System, without interest, upon a service retirement, which is voluntary upon twenty years of service or attaining age

fifty-five and mandatory at age sixty-five. This repayment is in addition to the member's service retirement allowance.

Section 86.267.4 provides that, where a member has been retired because of a service-related permanent total disability (i.e., unable to perform work of *any* kind) and agrees to serve as a special consultant to the Board of

and interest only in the specific circumstances to which these provisions apply. Because these provisions do not apply to Officer Sisco, the Board of Trustees claims the exclusion of his accumulated contributions from the offset will repay him that amount in contravention of the General Assembly's intent.

█ It is true that, when clearly necessary, the strict letter of a statute must yield to the manifest intent of the legislature. *Brownstein v. Rhomberg–Haglin & Assoc., Inc.,* 824 S.W.2d 13, 16 (Mo. banc 1992). This tenet is inapplicable here, however, because we do not find the plain meaning of section 86.297 to conflict with the General Assembly's intent. The Board of Trustees' position that the General Assembly intended to return contributions only where sections 86.253.4, .267.4, and .290 apply is predicated on an apparent misunderstanding of the retirement scheme created by sections 86.200—.363. The plain language of section 86.323 makes clear that accumulated contributions *are* returned to members receiving retirement benefits, albeit in installments and not as a lump-sum repayment. Conversely, where they apply, sections 86.253.4, .267.4, and .290 provide for the lump-sum repayment of members' contributions and, in certain cases, the interest thereon, *as an additional benefit* to those to which the member is otherwise entitled to receive.

The judgment of the trial court is affirmed.

WILLIAM H. CRANDALL Jr., J., concurs.

JAMES R. DOWD, J., concurs.

Trustees on the problems of retirement and aging, such member is entitled to receive as compensation for such service the total amount of his or her contributions to the Retirement System, without interest. Such payment is in addition to the member's disability retirement allowance.

Section 86.290 requires the repayment of a member's accumulated contributions where the member ceases to be a police officer by reason other than death or retirement.