

In the
**Missouri Court of Appeals**
**Western District**

| | |
|---|---|
| **HEATHER M. BASS,** | |
| **Appellant-Respondent,** | **WD82700 Consolidated with WD82704** |
| **v.** | **OPINION FILED:** |
| **POLICE RETIREMENT SYSTEM OF KANSAS CITY, MISSOURI,** | **NOVEMBER 23, 2021** |
| **Respondent-Appellant.** | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Charles H. McKenzie, Judge**

**Before Division Two: Mark D. Pfeiffer, Presiding Judge, Karen King Mitchell, Judge, Anthony Rex Gabbert, Judge**

Heather Bass appeals and the Police Retirement System of Kansas City, Missouri cross-appeals the judgment of the Jackson County Circuit Court granting summary judgment in partial favor of each party. Bass raises four points on appeal complaining the court erred in determining the offset amount, in denying her request to amend her petition, and in denying prejudgment interest. The Police Retirement System of Kansas City, Missouri raises one point on appeal complaining the trial court erred in not including attorney's fees and costs in the offset calculation. The judgment is affirmed.

**Facts**

Heather Bass was a Kansas City, Missouri police officer who sustained a duty related injury in January 2008. As a result, she was retired by the Kansas City, Missouri Police Department and

became eligible to receive duty related disability pension benefits. Bass also filed a worker's compensation claim and hired an attorney to represent her on that claim. She engaged her attorney on a contingency fee basis. As a result of her worker's compensation claim she was awarded permanent total disability benefits and received lump sum benefits and a weekly periodic award.

As a member of the Kansas City, Missouri Police Department, Bass's monthly duty related disability pension was provided by the Police Retirement System of Kansas City, Missouri ("PRSKC"). Pursuant to Section 86.1190[1] there is a reduction in benefits for a member who receives a duty related disability pension and also a worker's compensation benefit on account of the same disability.

On December 7, 2017, Bass filed a petition for declaratory judgment against PRSKC requesting that the court determine, as a matter of law, that PRSKC is erroneously applying the law by reducing her benefits in too large an amount. She challenged the calculations used by PRSKC to determine that offset and also asserted that the offset should not include any amounts from her worker's compensation award that she did not receive but instead went directly to the attorney she retained to represent her in her worker's compensation claim.

Both parties filed motions for summary judgment. The trial court ruled on the motions for summary judgment on November 16, 2018. It granted in part and denied in part each party's motion. The trial court found that there were no material issues of fact in dispute as it related to the matters presented for the court to resolve regarding the methods used by PRSKC in its determination of what should be offsets or what should not be considered offsets.

---

[1] All statutory references are to RSMo 2016 as supplemented unless otherwise indicated.

2

The trial court determined that PRSKC's interpretations of the statutes were correct and its offsets as calculated pursuant to the statutes were correct in all respects except for the offset that it included relating to the attorney's lien on Bass's worker's compensation benefits and the expenses her attorney incurred in obtaining those benefits. The trial court found that PRSKC violated section 86.1190 by including those sums of money that are legally and solely owed to Bass's attorney because of her attorney's lien when calculating the offset of Bass's lump sum and weekly compensation disability payments against her pension benefits.

The court concluded that to the extent Bass had to pay attorney fees and litigation expenses, she did not get a windfall. It stated that the amount Bass was awarded in her worker's compensation case is subject to an attorney's lien and therefore a portion of her lump sum award and her weekly benefits have not, and will not, go to Bass to compensate her for the injuries sustained and the benefits provided to her from her duty related disability pension. It found that PRSKC's interpretation of the statutes is incorrect and required PRSKC to consider those amounts for attorney fees and litigation expenses in its determination of the offset and reduce the offset by those amounts.

The trial court denied Bass's motion for summary judgment in part as it related to any offsets referenced in the petition for declaratory judgment other than the offsets requested to be excluded for attorney fees and litigation expenses. The trial court granted Bass's motion for summary judgment in part and found that PRSKC was in violation of section 86.1190 RSMo by including those sums of money that are legally and solely owed to Bass's attorney.

The trial court granted PRSKC's motion in part in all respects relating to the offsets PRSKC calculated pursuant to section 86.1190 other than those relating to the attorney's lien and litigation expenses. The trial court denied PRSKC's motion for summary judgment in part as it related to

3

the offsets the PRSKC included in its calculations to reduce Bass's benefits relating to the attorney's lien and litigation expenses.

The trial court did find, however, that two issues could not be determined in ruling on the motions for summary judgment. Those issues were the amount of money Bass did not receive from her worker's compensation award that went to her attorney because of the attorney's lien and her prayer for relief that she should be awarded attorney fees under section 527.100 for pursuing this lawsuit. The trial court held a trial on December 7, 2018, to determine all issues not resolved by the ruling on the summary judgment motions. It issued its judgment on February 27, 2019.

The trial court found that the lump sum benefit awarded to Bass on April 4, 2017 was $207,537.19. The attorney's lien on that award was $51,884.30. The litigation expenses incurred were $11,199.20. Therefore, the trial court found, from the lump sum award after the deduction of attorney fees and litigation expenses, Bass received $144,453.69. The trial court found that the offset should have been $144,453.69 and not $207,537.19 as originally calculated by PRSKC because that is the amount Bass actually received from the total lump sum benefit. Bass was awarded $742.72 of weekly Worker's Compensation benefits of which she receives $557.04 after the attorney's lien of $185.68.

The trial court found that as of November 30, 2018, the attorney fees and litigation expenses that should not have been included in the offset and therefore were wrongly withheld as of that date were $9,806.26. That amount was ordered to be reimbursed to Bass. The trial court ordered that as it relates to all future payments, that 25% of the weekly benefits which are not being paid to Bass but rather her attorney shall not be part of the set off. Finally, the trial court stated that Bass withdrew her prayer for attorney fees pursuant to section 527.100. It accordingly denied the motion as moot. The trial court further denied Bass prejudgment interest.

4

This appeal follows.

## Standard of Review

"The standard of review in a declaratory judgment action is the same as in any other court tried case." *Metrc, LLC v. Steelman*, 617 S.W.3d 472, 480 (Mo. App. W.D. 2021). "Thus, the trial court's Judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id*. at 480-81. "Statutory interpretation is an issue of law that we review de novo." *Wilson v. Trusley*, 624 S.W.3d 385, 396 (Mo. App. W.D. 2021). "A circuit court's grant of summary judgment is subject to *de novo* review on appeal." *Holmes v. Steelman*, 624 S.W.3d 144, 148 (Mo. banc 2021). "Summary judgment will be affirmed when the moving party has established a right to judgment as a matter of law on the basis of facts as to which there is no genuine dispute." *Id*. (internal quotation marks omitted).

## Bass – Point I

In her first point on appeal, Bass claims the trial court erred in granting in part PRSKC's motion for summary judgment with respect to the offset amount. She argues that the trial court misinterpreted section 86.1190.1. Bass states the court found that the words "funds provided by the city" included investment income, interest, and other monies. She maintains these funds were not provided by the city and should not have been considered in determining any offset.

PRSKC is created by section 86.910. It is governed by sections 86.900 through 86.1280. When Bass became a police officer, she became a member of PRSKC. § 86.1090.1. When an officer retires receiving duty disability retirement benefits and also receives workers compensation benefits for the same disability, an offset is applied to the officer's retirement benefits. § 86.1190.

Section 86.1190 states:

1. Any periodic payment, excluding payments for medical treatment, which may be paid or payable by cities under the provisions of any workers' compensation or similar law to a member or to the dependents of a member on account of any disability or death shall be offset against any benefits payable to the recipient of the workers' compensation payments from *funds provided by cities* under the provisions of sections 86.900 to 86.1280 on account of the same disability or death; except that, amounts payable under subsection 1 of section 86.1250 and section 86.1260 shall not be offset or reduced by any amount paid or payable under any workers' compensation or similar law. However, in no event shall the amount paid from funds under the provisions of sections 86.900 to 86.1280 be less than the amount which represents the *member's percentage*, as defined in this section, of total benefits payable under sections 86.900 to 86.1280, other than under subsection 1 of section 86.1250 and section 86.1260 and before any offset for workers' compensation benefits.

2. Any lump sum amount, excluding payments for medical treatments, which may be paid or payable by the cities under the provisions of any workers' compensation or similar law to a member or to the dependents of a member on account of any disability or death shall be offset against any benefits payable from funds provided by cities under the provisions of sections 86.900 to 86.1280 on account of the same disability or death; except that, amounts payable under subsection 1 of section 86.1250 and section 86.1260 shall not be offset or reduced by any amounts paid or payable under any workers' compensation or similar law. The amount by which each periodic payment made under the provisions of sections 86.900 to 86.1280 is offset or reduced shall be computed as the periodic amount necessary to amortize as an annuity over the period of time represented by the respective workers' compensation benefits the total amount of the lump sum settlement received as a workers' compensation benefit by a beneficiary of the retirement system. Such computation shall be based upon the same interest rate and mortality assumptions as used for the retirement system at the time of such computation.

However, in no event shall the amount paid from funds under the provisions of sections 86.900 to 86.1280 be less than the amount which represents the member's percentage, as defined in this section, of total benefits payable under sections 86.900 to 86.1280, other than under subsection 1 of section 86.1250 and section 86.1260 and before any offset for workers' compensation benefits.

3. As used in this section, the term **"member's percentage"** shall be the fraction of which the numerator is the percentage of compensation contributed by a working member to the retirement pension system under section 86.1010 during the pay period immediately preceding such member's death or disability which created entitlement to benefits and the denominator is the sum of the percentages of a member's compensation contributed by a working member under section 86.1010 and the city under section 86.1000 to the retirement pension system during such pay period. Such percentage shall identify the portion of any benefits due under

the provisions of sections 86.900 to 86.1280 which is deemed to have been provided by the member's own contributions.

(Emphasis added).

PRSKC argues the following calculations are applicable to this case: Bass was awarded $742.72 of weekly Worker's Compensation benefits. That award was converted into an offset: $742.72 x 52 weeks = $38,621.44/ 12 months = $3,218.45 per month offset. Bass's member's percentage was calculated by dividing the member contribution rate (10.55%) at the time of her retirement by the sum of the member contribution rate and the employer contribution rate (19.7%). Bass's member percentage is calculated as follows: 10.55/(10.55 + 19.70) = 10.55/30.25 = 34.88%. That member's percentage is then applied to Bass's monthly duty disability retirement benefit to determine her minimum monthly benefit payment, after the offset is applied, and the maximum amount of the offset.

Bass's monthly duty disability retirement benefit as of May 2017 was $5,029.30. Applying the member's percentage determines the minimum monthly benefits payment following the offset: $5,029.30 x 34.88% = $1,754.22. The maximum offset is the difference between the monthly duty retirement benefit and the minimum monthly benefit payment: $5,029.30 - $1,754.22 = $3,275.08. In Bass's case, the sum of her periodic offset and her lump sum award offset ($3,218.45 + $524.08 = $3,740.53) exceeded the maximum allowable offset of $3,275.08. Accordingly, PRSKC applied a monthly offset of the lower amount: $3275.08. Bass's monthly duty retirement benefit was offset to $1,754.22.

In her first point on appeal, Bass complains about the 19.70% employer contribution rate in the calculations set forth above. That number represents the percentage contributed by the city to the pension system during the pay period immediately preceding such member's disability

7

which created entitlement to benefits. § 86.1190.3. Bass argues that 19.70 is the percentage of the pension fund that comes from "funds provided by the cities." She argues that her monthly benefit of $5,029.30 should have been offset by 19.70%. Instead, she was only awarded her member's percentage (34.88%) which means her benefit was offset by 65.12%. Bass argues that the legislative intent behind section 86.1190 was to prevent a city from having to pay a member twice for the same injury and/or disability and to prevent a windfall to the member. She argues that reducing her benefits by 65.12% is not consistent with that purpose.

The formula for calculating the member's percentage in section 86.1190.3 involves creating a fraction where the percentage the officer contributes from his or her last paycheck is over the sum of that percentage added with the percentage contributed by the city. The fraction is not created by taking the percentage the member contributed over 100 (the sum of all contributions). PRSKC acknowledges that the officer's benefits are comprised of: the officer's contributions, the city's contribution, and investment earnings and/or interest. The question presented in this point on appeal is whether those investment earnings are funds provided by the city, funds provided by the officer, or some other scenario.

*Sisco v. Bd. of Trustees of Police Ret. System of St. Louis*, 31 S.W.3d 114 (Mo. App. E.D. 2000), involved interpretation of the St. Louis police pension system. St. Louis' pension system is created under the part of Chapter 86 applicable to any city not within a county (sections 86.200 through 86.364) while PRSKC is created under the part of Chapter 86 applicable to cities of 300,000 to 700,000 people (sections 86.900 through 86.1280).

Section 86.297 authorizes the offset of workers' compensation against "any benefits payable out of *funds provided by the [City]*." (Emphasis added.) The *Sisco* court stated that the officer's "accumulated contributions were not funds provided by the City, and, therefore, were

8

properly excluded from the setoff calculation by the trial court." *Sisco*, 31 S.W.3d at 120. The *Sisco* court then looked at section 86.200(1) where "accumulated contributions" was defined as "the sum of all mandatory contributions deducted from the compensation of a member and credited to the member's individual account, *together with members' interest thereon*." (Emphasis added.) The *Sisco* court used that definition even though the phrase "accumulated contributions" does not appear in section 86.297. It held that the interest credited to the officer's contributions to the retirement system was not paid from "funds provided by the City." *Sisco*, 31 S.W.3d at 120 (citing § 86.303).[2]

Section 86.900(1), applicable to PRSKC and section 86.1190, defines "accumulated contributions" as "the sum of all amounts deducted from the compensation of a member and paid to the retirement board, together with all amounts paid to the retirement board by a member or by a member's beneficiary, for the purchase of prior service credits or any other purpose permitted under sections 86.900 to 86.1280." Unlike the statute in *Sisco*, the statute applicable to PRSKC does not reference interest on an officer's contributions. Further, the statutory scheme in *Sisco* did not have a "member's percentage."

PRSKC is funded by a combination of mandatory city and employee contributions. See §§ 86.900(1); 86.1000; 86.1010. Unlike a defined contribution plan where the participant has a

---

[2] When a member is entitled to receive benefits from the Retirement System, other than benefits consisting solely of a refund of that member's contributions, such benefits are paid from the "benefit reserve fund." Section 86.323. The benefit reserve fund consists of a member's accumulated contributions, which are transferred from the members' savings fund at the time the payment of benefits is approved, plus an "additional amount from the general reserve fund as is calculated by the actuary to be necessary with the member's contributions to provide the payment of all benefits arising from the service of such member." Section 86.323. Monies in the general reserve fund are contributed by the City. Section 86.327.

*Sisco*, 31 S.W.3d at 116. Section 86.323 was repealed, effective July 1, 2000.

9

separate account comprised of contributions and investment returns, PRSKC does not maintain separate accounts for each member. Instead, it invests and manages the collective pension fund assets in order to provide a defined retirement benefit upon normal retirement or retirement due to disability, regardless of investment return. See §§86.1000, 86.1010.

Section 86.1190 provides that funds provided by the city are reduced by the amount of a workers' compensation award for the same disability. Depending on the size of the workers' compensation award, it is possible that the officer will still receive a benefit that includes funds provided by the city. Section 86.1190 also provides for a minimum amount that the officer will receive. As discussed above, this minimum amount is more that the total dollar amount the officer contributed to the pension fund. Instead, the direct dollar contributions are separated into a percentage attributable to the officer and a percentage attributable to the city. That percentage is then applied to the total benefit received by the officer. In this way, credit for the investment income and interest is allotted between the officer and the city.

In Bass's case, her member's percentage resulted in a finding that she contributed 34.88% of the monthly funds allotted to her. The resulting conclusion from this calculation is that the city contributed the remaining 65.12% of the monthly funds allotted to Bass. As Bass's member's percentage was larger than subtracting the workers' compensation award (both for her lump sum award and her periodic award) from her total monthly benefit, she was awarded her member's percentage. This was not error.

The point is denied.

### Bass – Point II

In her second point on appeal, Bass claims the trial court erred in denying her motion to amend her petition. She argues that PRSKC's failure to lawfully promulgate administrative rules

10

was tried by implied consent because the issue was fully argued by both parties in their competing motions for summary judgment. Bass maintains that no hardship or prejudice would have befallen PRSKC by the proposed amendment to the petition.

"Rule 55.33 allows an unpleaded issue to be tried by consent of the parties." *Buscher v. Buscher*, 620 S.W.3d 283, 287 (Mo. App. E.D. 2021). "In effect, the implied consent rule provides that if evidence applying to a new issue is admitted, without a timely and specific objection, and the evidence is not relevant to issues already present, Rule 55.33(b) treats the new issue as having been raised in the pleadings." *Id*. (internal quotation marks omitted).

Bass's petition was for declaratory judgment. She asked the court to declare that: 1) PRSKC could only offset her pension by the percentage the city paid into it; 2) PRSKC may not deduct amounts owed to Bass's attorney; and 3) PRSKC must use a reasonable discount rate for life expectancy. The petition does not reference Chapter 536 or the failure to promulgate administrative rules. Both parties filed motions for summary judgment. The trial court granted in part and denied in part the motions by both parties. The trial court set a trial date to resolve any remaining issues. The day before trial, Bass filed a motion to amend her declaratory judgment petition. The parties argued the merits of the motion the day of trial. Bass claimed that while her petition did not raise a claim under the Missouri Administrative Procedures Act, the issue of whether PRSKC failed to promulgate administrative rules was subject to discovery and lengthy discussion in the cross motions for summary judgment. She asserted that no further discovery or evidence was necessary for the court to rule on the issue of failure to promulgate administrative rules.

"Whether to allow the amendment of a pleading is discretionary with the trial court and its decision will not be disturbed absent an obvious and palpable abuse of discretion." *Ferrellgas,*

11

*Inc. v. Edward A. Smith, P.C.*, 190 S.W.3d 615, 618–19 (Mo. App. W.D. 2006). "Facts come into a summary judgment record *only* via Rule 74.04(c)'s numbered-paragraphs-and-responses framework." *Green v. Fotoohighiam*, 606 S.W.3d 113, 117 (Mo. banc 2020) (internal quotation marks omitted) (emphasis in original). "Courts determine and review summary judgment *based on that Rule 74.04(c) record, <u>not</u>* the whole trial court record." *Id*. (internal quotation marks omitted) (emphasis in original). "Affidavits, exhibits, discovery, etc. generally play only a secondary role, and then only as cited to support Rule 74.04(c) numbered paragraphs or responses, *since parties cannot cite or rely on facts outside the Rule 74.04(c) record.*" *Id*. (internal quotation marks omitted) (emphasis in original). "[S]ummary judgment rarely if ever lies, or can withstand appeal, unless it flows as a matter of law from appropriate Rule 74.04(c) numbered paragraphs and responses *alone.*" *Id*. at 117-18 (internal quotation marks omitted) (emphasis in original). "Taken together, these summary judgment principles require a court to determine whether *uncontroverted* facts established via Rule 74.04(c) paragraphs and responses demonstrate [movant's] right to judgment *regardless of other facts or factual disputes.*" *Id*. at 118 (internal quotation marks omitted) (emphasis in original).

In her statement of uncontroverted facts, Bass stated that PRSKC has the authority to promulgate administrative rules and that PRSKC has not promulgated administrative rules, including with respect to the undefined term "funds provided by the cities." PRSKC admitted it had the authority to promulgate administrative rules and that it had not promulgated administrative rules. However, it denied that promulgation of a rule was required under the Missouri Administrative Procedures Act. It also stated that the words "funds provided by the cities" have a clear meaning as used in the statute.

Section 536.016 states in relevant part:

12

1. Any state agency shall propose rules based upon substantial evidence on the record and a finding by the agency that the rule is necessary to carry out the purposes of the statute that granted such rulemaking authority.

2. Each state agency shall adopt procedures by which it will determine whether a rule is necessary to carry out the purposes of the statute authorizing the rule. Such criteria and rulemaking shall be based upon reasonably available empirical data and shall include an assessment of the effectiveness and the cost of rules both to the state and to any private or public person or entity affected by such rules.

Bass's statement of uncontroverted facts did not address the requirements of section 536.016 set forth above. Moreover, PRSKC specifically stated a rule was not necessary in its response to her statement of uncontroverted fact. Bass's argument that the issue of failure to promulgate administrative rules was fully tried through the summary judgment motions and was ready for the court to rule on is without merit.

Given that the issue was not tried by consent, the question is whether the trial court abused its discretion in not permitting Bass to amend her petition the morning of trial. *See* Rule 55.33(a). We find that it did not.

The point is denied.

### Bass – Point III

In her third point on appeal, Bass claims the trial court erred in granting part of PRSKC's motion for summary judgment with respect to the offset amount. She argues that the evidence used by the Pension Board to calculate life expectancy to determine the amount of offset was arbitrary and capricious. Bass states that section 86.1190.1 requires that PRSKC use "mortality assumptions" that are "used for the retirement system at the time of computation." She claims that PRSKC did not do this but instead relied upon other information in an effort to increase the offset amount and in turn decrease the benefits which are owed to Bass.

13

Section 86.1190.2[3] states in relevant part:

2. The amount by which each periodic payment made under the provisions of sections 86.900 to 86.1280 is offset or reduced shall be computed as the periodic amount necessary to amortize as an annuity over the period of time represented by the respective workers' compensation benefits the total amount of the lump sum settlement received as a workers' compensation benefit by a beneficiary of the retirement system. *Such computation shall be based upon the same interest rate and mortality assumptions as used for the retirement system at the time of such computation.*

(Emphasis added). Bass received both a lump sum award and a periodic award for her workers' compensation claim. This point pertains to her lump sum award.

The Social Security mortality table sets Bass's life expectancy at 38 years. PRSKC reduced that number by five years, using an expectancy of 33 years. This is because PRSKC applies a five year set forward assumption to disabled members. Bass argues that PRSKC Actuarial Reports have found that there is insufficient data to provide a credible analysis to support PRSKC's five year set forward for disabled members. She asks this court to find a breach of fiduciary duty and order PRSKC to stop using the five year set forward.

PRSKC's Actuarial Valuation Report, completed by a consulting firm in April 2017, states the following:

**Disabled Members:** There is insufficient data to provide credible analysis. **We recommend the disabled mortality assumption remain unchanged, i.e., the RP-2000 Healthy Annuitant Mortality Tables for males and females with a five year set forward and generational mortality improvements anticipated by Scale AA.**

(Emphasis in original.) Section 86.920 establishes the PRSKC retirement board and states:

---

[3] Bass's point relied on and argument cite section 86.1190.1. She even quotes that section as stating in pertinent part:

Any awards…[of] workers' compensation…to a member…shall be offset against any benefits payable from funds provided by cities …. **Such computation shall be based upon the same interest rate and mortality assumptions as used for the retirement system at the time of such computation.**

The phrase "any awards" does not appear in section 86.1190. The rest of the language is from section 86.1190.2.

The general administration and the responsibility for the proper operation of the retirement system and for making effective the provisions of sections 86.900 to 86.1280 are hereby vested in a retirement board of nine persons.

The calculations used by PRSKC to determine the statutory offset of a member's duty disability benefits by the member's workers' compensation award are based upon actuarial assumptions approved by the Board of PRSKC. Section 105.664 requires the PRSKC to prepare a biennial actuarial valuation. The PRSKC Board is required to periodically review and approve certain actuarial assumptions, including the interest rate and mortality assumptions, used in its actuarial valuation.

The Board-approved actuarial assumptions, which the PRSKC is required to use, are: an interest rate of 7.5% and the Social Security mortality tables, available at the time of calculation, set forward five years by a mortality rate, based on PRSKC experience, for members receiving a duty disability retirement benefit. While the Actuarial Valuation Report stated that "[t]here is insufficient data to provide credible analysis" it also recommended that the five year set forward "remain unchanged." Bass has not shown that the PRSKC's calculation of the life expectancy of disabled members is arbitrary and capricious. *See, e.g., Leggett v. Missouri State Life Ins. Co.*, 342 S.W.2d 833, 910–11 (Mo. 1960).

The point is denied.

### Bass – Point IV

In her fourth point on appeal, Bass argues the trial court erred in denying her claim for prejudgment interest. She claims the trial court misinterpreted the nature of her claims. Bass states that PRSKC had a fiduciary duty to her and that her claims for damages were readily ascertainable

15

on May 31, 2017.  She maintains that her claims were appropriate for an award of prejudgment interest which she sought in her petition.

"Judgments do not bear interest either as a matter of legal right or under the common law." *A.G. Edwards & Sons, Inc. v. Drew*, 978 S.W.2d 386, 396 (Mo. App. E.D. 1998).  "Any allowance of interest, therefore, must be based upon either a statute or a contract, either express or implied." *Id*.  Bass cites *A.G. Edwards & Sons, Inc.* for the proposition that she is entitled to prejudgment interest because PRSKC breached a fiduciary duty owed to her.  In *A.G. Edwards & Sons, Inc.*, the plaintiff filed a petition alleging breach of contract and breach of fiduciary duty.  *Id*. at 388.  The court noted that, pursuant to section 408.020, creditors can receive interest "on all accounts after they become due and demand of payment is made."  *Id*. at 396.  "As used in section 408.020, 'account' is regarded as equivalent to 'claim' or 'demand.'" *Id*. at 397.

In the current case, Bass brought a declaratory judgment action.  She did not bring a cause of action for breach of contract or breach of fiduciary duty.  Her argument is without merit.  *See Pediatric Associates, Inc. v. Charles L. Crane Agency Co.*, 21 S.W.3d 884, 886 (Mo. App. E.D. 2000) ("All of plaintiff's cases are distinguishable in that the parties requesting pre-judgment interest under Section 408.020 prevailed on contract claims; or contract *and* tort claims; or it wasn't clear from the record under which statute the party seeking pre-judgment interest was relying on.").

The point is denied.

**PRSKC – Point I**

In its first point on appeal, PRSKC claims the trial court erred in ruling that Bass's attorney's fees and expenses could not be included in the offset calculation.  It argues that the court misapplied the law because the plain language of section 86.1190 states that PRSKC "shall" offset

16

from any duty disability payments "any" periodic or lump sum workers' compensation payments "which may be paid or payable" to a member on account of the same disability or death. PRSKC further states that the only exception contained in the statute excludes "payments for medical expenses." It maintains that there is nothing in the plain language of the statute that permits PRSKC to remove from the offset calculation amounts that Bass may owe her attorney in relation to the workers' compensation action.

Chapter 287 codifies Missouri's Workers' Compensation Law. Section 287.260.1 provides in relevant part:

> … if written notice is given to the division or the commission of the nature and extent thereof, the division or the commission may allow as lien on the compensation, reasonable attorney's fees for services in connection with the proceedings for compensation if the services are found to be necessary and may order the amount thereof paid to the attorney in a lump sum or in installments. All attorney's fees for services in connection with this chapter shall be subject to regulation by the division or the commission and shall be limited to such charges as are fair and reasonable and the division or the commission shall have jurisdiction to hear and determine all disputes concerning the same.

Missouri regulations also provide:

> If the services of an attorney are found to be necessary in proceedings for compensation, the administrative law judge shall set a reasonable fee considering relevant factors which may include, but are not limited to, the nature, character and amount of services rendered, the amount in dispute, and the complexity of the case and may allow a lien on the compensation due to the claimant.

8 C.S.R. § 50–2.010(15). Under this statutory framework, the Labor and Industrial Relations Commission is authorized to set reasonable attorneys' fees or impose a lien after considering all relevant factors. "The general practice in Missouri is to set a fee not to exceed 25% of the award." *Sterling v. Mid Am. Car, Inc.*, 456 S.W.3d 473, 476 (Mo. App. W.D. 2014). "[D]enying attorney's fees for work prosecuted on behalf of an injured claimant can have a chilling

17

effect upon the ability of an injured party to obtain adequate representation." *Id*. at 477 (internal quotation marks omitted).

In *Sisco*, 31 S.W.3d at 119, the Board of Trustees of the Police Retirement System of St, Louis argued that the trial court erred in its application of section 86.297 when it reduced the amount of the workers' compensation award to be offset against retirement benefits by the attorneys' fees and expenses occurred by the police officer. The Eastern District noted that "[t]he purpose of this setoff is to prevent double compensation for one injury, thus giving the injured person a windfall." *Id*. (internal quotation marks omitted). It held, "[t]o the extent that [the officer] had to pay attorney's fees and related expenses to obtain his workers' compensation award, he did not receive a windfall." *Id*. at 120. In *Sisco*, as in the current case, the officer's workers' compensation award was subject to a lien in the amount of 25% in favor of his attorney. *Id*. "The award amount subject to the lien will not go to [the officer] but to his attorney; therefore, [the officer] is not receiving a windfall." *Id*. "The trial court correctly reduced [the officer's] workers' compensation offset by the attorney's fees and related expenses incurred in connection with his workers' compensation claim."

This is precisely what the trial court did in Bass's case. PRSKC acknowledges that its argument is in opposition to the holding in *Sisco*. It argues that the court's conclusion in *Sisco* "does not stand up to a reasoned scrutiny," that *Sisco* did not correctly engage in statutory interpretation, that *Sisco* misinterpreted precedent, and that cases from jurisdictions outside of Missouri support PRSKC's argument. The Supreme Court of Missouri denied the application of transfer in *Sisco*. The Eastern District's opinion is still good law, and we find no error in its holding.

The point is denied.

18

**Conclusion**

The judgment is affirmed.

_____
Anthony Rex Gabbert, Judge

All concur.